# Whaley v. Citizens' National Bank, Appellant.

*Negligence—Nuisance—Electric shock—Street—Master and servant.*

Where a national bank facing on a public street extends a brass rail in front of its window four or five feet above the sidewalk, for the purpose of protecting the window and the front of the building from persons congregating on the sidewalk, and connects the rail with an electric battery controlled and operated inside the bank building, the bank will be liable in damages for personal injuries sustained by a person receiving a shock from contact with the rail, and this is the case where the injury is received at night, and at a time when only the janitor of the bank was in the building. Such a recovery may be sustained either on the ground that the bank was negligent in leaving a dangerous appliance in a condition to be operated by a servant or stranger, or on the ground that it was maintaining a nuisance in a public street.

In such a case if the evidence is conflicting as to whether or not the battery was capable of inflicting the injury complained of, the case is for the jury.

If the injury was caused by the janitor operating the battery, it is no defense that he had positive orders not to use or meddle with the apparatus.

Negligence committed by a servant in the course of his employment, although he act without the knowledge or contrary to the wishes of the master, renders the master liable.

A man cannot so manage a nuisance created by himself, as to escape damages because he was careful in operating it.

*Appeals—Assignments of error—Evidence.*

The appellate court will not consider an assignment of error to the admission of evidence or to a refusal to withdraw evidence, where the evidence in question is not quoted in connection with the assignment.

Argued May 10, 1905. Appeal, No. 14, April T., 1905, by defendant, from judgment of C. P. Lawrence Co., Sept. T., 1902, No. 62, on verdict for plaintiff in case of Robert H. Whaley v. Citizens' National Bank of New Castle. Before BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before WALLACE, P. J.

The opinion of the Superior Court states the facts.

Verdict and judgment for plaintiff for $775. Defendant appealed.

*Errors assigned* were (1–4) various rulings on evidence, but not quoting the evidence; (5) refusal of binding instructions for defendant.

*J. Norman Martin*, for appellant.—There can be no recovery where one is killed or injured by touching a defectively insulated wire while painting a roof where there is no evidence that the company had notice of the defect and there is no evidence as to the cause of the defect: Smith v. Electric Light Co., 198 Pa. 19.

The doctrine of respondent superior does not apply in a case like this where the employee, the inferior, exceeds his authority. An employer is not responsible for the willful tort of his servant: Towanda Coal Co. v. Heeman, 86 Pa. 418; Flower v. R. R. Co., 69 Pa. 210; Henry v. R. R. Co., 139 Pa. 289; Ry. Co. v. Donahue, 70 Pa. 119; Phila., Germantown, etc., R. R. Co. v. Wilt, 4 Wharton, 143; Drew v. Peer, 93 Pa. 234; New Orleans, etc., R. R. Co. v. Jopes, 142 U. S. 18 (12 Sup. Ct. Repr. 109); Mulligan v. Ry. Co., 129 N. Y. 506 (29 N. E. Repr. 952); Cotter v. Ry. Co., 15 Phila. 255; Duff v. R. R. Co., 91 Pa. 458.

The maxim qui facit per alium facit per se can apply only where there is an authority, either general or special. It is not pretended there was any special authority in the janitor: Flower v. Pennsylvania R. R. Co., 69 Pa. 210; Kirby v. R. R. Co., 76 Pa. 506; Monument Nat. Bank v. Globe Works, 101 Mass. 57; 1 Addison on Torts, 4; Foster v. Essex Bank, 17 Mass. 479; Garvey v. Dung, 30 Howard Pr. (N. Y.) 315; Philadelphia & Reading R. R. Co. v. Derby, 55 U. S. 468.

*H. K. Gregory*, with him *S. P. Emery* and *T. W. Dickey*, for appellee.—Parties who maintain a dangerous agency along a public highway are held to a high degree of care: Dickson v. Hollister, 123 Pa. 421; Snader v. Murphy, 19 Pa. Superior Ct. 35; U. S. Illuminating Co. v. Grant, 55 Hun, 222 (7 N. Y. Supp. 788); Wittleder v. Citizens' Electric Illuminating Co., 47 App. Div. 410 (62 N. Y. Supp. 297); Larson v. Cent. Ry. Co., 56 Ill. App. 263; Schultz v. Faribault Electric Co., 82 Minn. 100 (84 N. W. Repr. 631); Perham v. Electric Co., 33 Oregon, 451 (53 Pac. Repr. 14).

There is a presumption of negligence in this case: 1 Shear-

man & Redfield on Negligence, secs. 59, 60; Shafer v. Lacock, 168 Pa. 497; Matthews v. Railroad Co., 18 Pa. Superior Ct. 10; Fisher v. Ruch, 12 Pa. Superior Ct. 240.

The maintaining of a dangerous agency is a nuisance: Harriman v. Ry. Co., 45 Ohio, 11 (12 N. E. Repr. 451); 1 Shearman & Redfield on Negligence, sec. 154; Clark v. Chambers, L. R., 3 Q. B. Div. 327.

While not liable for the willful and independent trespass of his servant, a master is responsible civilly for the manner in which the servant does the work that he is employed to do, and it is the character of the employment when an act is done, not the private instructions to the servant, by which the master's liability is to be determined: McClung v. Dearborne, 134 Pa. 396; Weber v. Lockman, 60 L. R. A. 313; Euting v. Chicago, etc., Ry. Co., 60 L. R. A. 158.

The case was for the jury: Devlin v. Beacon Light Co., 198 Pa. 583; Guinney v. Hand, 153 Pa. 404; Brennan v. Merchant & Co., 205 Pa. 258; Matthews v. R. R. Co., 18 Pa. Superior Ct. 10; McCafferty v. Penna. R. R. Co., 193 Pa. 339; Kane v. Philadelphia, 196 Pa. 502; Dormer v. Alcatraz Paving Co., 16 Pa. Superior Ct. 407.

OPINION BY MORRISON J., July 13, 1905:

The Citizens' National Bank, appellant, conducts its business in its own banking house on Washington street in the city of New Castle, Penna. In constructing its banking room a mahogany front was placed in that part of the building facing Washington street, the principal business street in the city of New Castle. The banking house is at the corner of Washington and Mill streets and built on the line of Washington street. People were in the the habit of congregating in front of the banking building, shutting out the light and leaning against the windows and sometimes striking their feet against the mahogany front. To remedy the annoyance, the bank attached to the building a brass rail in front of the west window, about four or five feet above the sidewalk on Washington street and by appliances and attachments, exclusively under appellant's control, connecting a battery or generator of electricity, by means of wires with said brass rail, charging the same from time to time with an electrical current, for the purpose

of shocking passers by who came in contact with the rail, while traveling over and upon the sidewalk, or by stopping in front of the bank building and leaning against or resting upon said rail.   The purpose of this was to prevent such persons from handling or touching the rail or getting against the front of the bank building.   From the evidence it appears that this rail projects into the street.

The battery or generator was located in the banking room, under or near the teller's counter and could be operated from that place and it was, of course, at all times under the care of the officers and servants of the appellant.   The evidence tends to show that this battery was frequently used and that several persons were more or less shocked who came in contact with the brass rail.   This happened frequently on or about August 9, 1900.   The plaintiff, Robert H. Whaley, alleges that on the latter date, in the evening, he stopped in front of the bank to speak to a friend, and without notice of any danger, laid his left hand on the rail and instantly received a shock of electricity which rendered him unconscious for several minutes, and necessitating the services of a physician, and from which his left arm has been permanently lamed.

There is testimony tending to show that a number of persons received serious electric shocks on or about August 9, 1900, by coming in contact with the rail in a similar manner to the way the plaintiff was shocked.   There is also evidence that the most severe shocks occurred at times in the evening after the bank had closed its doors for business ; that the janitor of the bank was a colored man ; that on the evening of, and just prior to, plaintiff's injury, a colored man turned the corner leading from South Mill street, carrying a sprinkling can in his hand, and sprinkled water on the pavement in front of the bank, that he then disappeared around the corner into South Mill street in the direction of a side door leading into the banking room ; that shortly after the time of injury a colored man was seen within the banking room and that before the employees of the bank left the building on the evening of the accident, the wire connecting the rail with the battery or generator had not been detached or disconnected, but it was left in a condition to be used by any person who might be in the banking room.

The first, second, third and fourth assignments of error palpably violate rule XVI of this court, because the first three do not state the evidence received to sustain the offer, and the fourth does not state the evidence asked to be withdrawn from the jury. Rule XVI: " When the error assigned is to the rejection or admission of evidence, the specification must quote the questions or offers, the ruling of the court thereon, and the testimony or evidence admitted, if any, together with a reference to the page of the paper-book where the matter may be found in its regular order in the printed evidence or notes of trial: " Haines v. Young, 13 Pa. Superior Ct. 303; Claflin Co. v. Querns, 15 Pa. Superior Ct. 464; Coverdill v. Heath, 12 Pa. Superior Ct. 15; Denniston v. Phila. Co., 1 Pa. Superior Ct. 599; London Assurance Corporation v. Russell, 1 Pa. Superior Ct. 320; Com. v. Smith, 2 Pa. Superior Ct. 474; Swope v. Donnelly, 190 Pa. 417; Raymond v. Schoonover, 181 Pa. 352; Battles v. Sliney, 126 Pa. 460; and Sopherstein v. Bertels, 178 Pa. 401. These assignments will not be considered.

The remaining six assignments practically ask for binding instructions in favor of the defendant. These cannot be sustained because we think there was sufficient evidence to carry the case to the jury, and we think the learned court submitted it in a charge of which the appellant has no just cause of complaint.

The appellant having placed the rail upon a public street and connected therewith an electric battery, was bound to know that it might be dangerous, and to know the extent of the danger, and to use the very highest degree of care practicable to avoid injury to everyone who might be lawfully in proximity to the rail and come accidentally or otherwise in contact therewith: Fitzgerald v. Edison Electric Co., 200 Pa. 540; Heh v. Cons. Gas Co., 201 Pa. 443.

Under the conceded facts in this case we think a presumption of negligence arises against the appellant: Shafer v. Lacock, Hawthorn & Co., 168 Pa. 497; Matthews v. Railroad Co., 18 Pa. Superior Ct. 10; Shearman & Redfield on Negligence (2d ed.), secs. 59 and 60; Fisher v. Ruch, 12 Pa. Superior Ct. 240. Under the positive and circumstantial evidence, and the legitimate inferences which a jury might draw therefrom, the following facts and conclusions of law could be found: (1) The appellant established the electrical apparatus and it was

under the control of its servants and employees.    (2) The question of whether or not the battery or generator was capable of producing the injury to the plaintiff was in dispute and it was properly submitted to the jury.    (3) If this battery was capable of inflicting the injury complained of, and the appellant had the lawful right to maintain and operate it for the purpose conceded, then the appellant was bound to use the highest degree of care so that no damage would result to anyone lawfully upon the street.    (4) If this was a dangerous apparatus, the defendant is liable if it damaged a person lawfully using the street even though the electricity was turned on by one without authority or by a trespasser.    The appellant employed a colored janitor and presumably the scope of his authority was the care of the banking rooms.    The electrical battery was, on the theory of the appellant, one of the appliances for the protection or care of the bank building.    There is evidence from which the jury could infer that the appellant's janitor sprinkled the pavement at or near the rail shortly before the plaintiff was injured, and that soon after the accident, this colored janitor was seen in the building.    From the evidence the jury could infer that he turned on the electricity which injured the plaintiff.    The jury was not bound to believe the evidence that the janitor was positively instructed not to meddle with or use the electrical apparatus, and that he did not touch it.    It is true there was evidence to this effect and no positive evidence contradicting it, but under all of the circumstances, the jury could infer that the janitor did have authority to use this battery, for the purpose of shocking persons who came in contact with the rail, and they could infer that the janitor was at the bank at and before the time of injury to plaintiff, and that he wet the pavement and turned on the electricity for the express purpose of shocking the plaintiff.    And if the jury disbelieved the evidence that the janitor was forbidden to touch the battery or use it, then the inference could be drawn that it was within the scope of his employment to do just what the plaintiff alleges was done at the time he was shocked.

It must be conceded that the evidence, expert and positive, tended strongly to show that the janitor had no right to use the battery; that the battery was not strong enough to injure

anyone; that neither the janitor nor anyone else employed by the appellant was in or about the bank at the time of the accident and, therefore, that the plaintiff was not injured by the appellant's apparatus or by anyone in its employ. It is not strange that the learned counsel for the appellant contends that the verdict ought to have been in its favor. But we have already said that these questions were in dispute, and they were for the jury, and the verdict established the truth of all of the essential elements of the plaintiff's case. The learned counsel did not see fit to move for a new trial and, therefore, no question as to whether the verdict was against the weight of the evidence is or can be raised before this court.

In McClung v. Dearborne, 134 Pa. 396, we think the rule laid down is broad enough to make the appellant liable even though the janitor turned on the electricity contrary to positive orders. On page 406 the Supreme Court says: "But if the coachman sees his enemy sitting on the box of another carriage, driving along the same highway, and he so guides his own team as to bring the carriages into collision, whereby injury is done, the master is liable. The coachman was hired to drive his master's horses. He was doing the work he was employed to do, and for the manner of his doing it the master is liable: Wood on Master & Servant, sec. 277. It would be no defense to the master to prove that he had given his coachman orders to be careful and not drive against others. . . . An excellent illustration is afforded by the case of Garretzen v. Duenckel, 50 Mo. 104. The defendant was a gunsmith. In his absence from his store a clerk was waiting upon a customer who wanted to buy a rifle. The customer desired to see it loaded, and would not buy unless this was done. The orders of the defendant to his clerk were that he should not load a rifle in the store. The customer was so earnest in desiring it that the clerk loaded it, and by accident it was discharged, the ball injured the plaintiff, who was sitting at a window on the opposite side of the street. The defendant set up his orders to his clerk as a defense, but it did not prevail."

That case is much like the one under consideration although not precisely in point. The janitor had charge of the bank building and the battery was one of the appliances therein and it was used for the purpose of shocking people on the street.

Concede that the janitor was forbidden to touch the battery, yet we think the duty rested upon the appellant to see that he did not touch it.

Negligence committed by a servant in the course of his employment, although he act without the knowledge or contrary to the known wishes of the master, renders the master liable: Weber v. Lockman, 60 L. R. A. 313; Euting v. Chicago, etc., Ry. Co., 60 L. R. A. 158; Brennan v. Merchant and Co., 205 Pa. 258.

In Devlin v. Beacon Light Co., 198 Pa. 583, the Supreme Court said : " The plaintiff showed a series of acts from which the inference of negligence on the part of the defendant arose ; that inference was sufficient to carry the case to the jury; having once arisen, it remained until overcome by countervailing proof ; whether so overcome was a question of fact which the court could not determine." See also Matthews v. R. R. Co., 18 Pa. Superior Ct. 10 ; McCafferty v. R. R. Co., 193 Pa. 339 ; Kane v. Phila., 196 Pa. 502 ; Dormer v. Paving Co., 16 Pa. Superior Ct. 407.

Brennan v. Merchant & Co., 205 Pa. 258, holds that whether " the negligent act was within the scope of the servant's employment is a question of fact for the jury." In our case the jury could infer it was.

We will now consider the question of the liability of the appellant if a trespasser turned on the electricity which injured the plaintiff. Suppose the appellant had loaded and cocked a number of guns, aiming them in the banking room so that, if discharged, they would be likely to shoot a person standing in the street, at or near the brass rail, and a burglar had entered the bank, when none of the officers or employees was there, and had discharged one or more of the guns and shot a man standing with his hand upon the brass rail. Can it be doubted that the appellant would be liable ? The liability would arise from so arranging a dangerous instrument that it would be likely to kill or injure persons upon the street. If this conclusion is sound, the illustration does not differ in principle from the case under consideration.

But the jury must have found that the battery was capable of inflicting serious injury to persons on the public street. This makes the device unlawful and it amounted to a nuisance per se, established and operated without the poor excuse of being

a substantial benefit to the appellant. Being a nuisance, the appellant was liable for damages caused by it, regardless of the question of negligence.   A man cannot so manage a nuisance, created by himself, as to escape damages because he was careful in operating it.   This view renders it wholly immaterial who turned on the electricity: Hauck v. Pipe Line Co., 153 Pa. 366.   See opinion of Supreme Court at page 373, etc.; 16 Am. and Eng. Ency. of Law (1st. ed.), 931, 932, 937 and 957 and notes; 12 Am. and Eng. Ency. of Law (2d. ed.), 506: " A master who intrusts a servant with some inherently dangerous thing (e. g., an explosive) is responsible for the omission of the servant to keep it safe; and, therefore, for his malicious use of it for mischievous purposes: " Shearman & Redfield on Negligence (5th. ed.), sec. 154, p. 236.

The learned counsel for the appellant has furnished us with an elaborate argument in which he has cited many authorities, but they do not convince us that the court erred in submitting this case to the jury, nor are we convinced of error in the manner of submission.   The counsel states as a proposition of law: " A railroad company is not liable for the shooting of a passenger by its conductor."   Citing New Orleans, etc., R. R. Co. v. Jopes, 142 U. S. 18.   An examination of that case shows that it was decided on the ground that the conductor was justified in shooting the passenger in self-defense.   The U. S. Supreme court said: " But here the defense is that the act of the conductor was lawful.   If the immediate actor is free from responsibility because his act was lawful, can his employer, one taking no part in the transaction, be held responsible?   Suppose we eliminate the employee and assume a case in which the carrier has no servants and himself does the work of carriage; should he assault and wound a passenger in the manner suggested by the instruction, it. is undeniable that if sued, as an individual, he would be held free from responsibility and the act adjudged lawful."

It is unnecessary to refer to the many authorities found in the argument for the appellant.   We have examined them and they do not convince us that the case was not properly submitted to the jury.

The assignments of errror are all dismissed and the judgment is affirmed.