## Rogers et al. v. Bond Bros.

June 16, 1939.

Doyle Willis, Judge.

W. E. Rogers, Jr., White & Clark and J. D. Standard for appellants.

240

Woodward, Dawson & Hobson, Taylor & Milam, Petrie & Davis and Trimble & Trimble for appellee.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

This is an appeal from a judgment of the Todd Circuit Court in favor of the appellee, Bond Brothers. Appellants, W. E. Rogers, Sr., and E. O. Morris, are the surviving members of a partnership operating under the name of the Guthrie Waterworks Company. The heirs-at-law of a third deceased partner, W. O. Nelson, have joined in the petition. The appellants own an artesian well near Guthrie, Kentucky, which was the sole source of the town's water supply from 1914 until "sometime after the year 1930." The well, amply sufficient for the needs of the town, then became so polluted with creosote that the water was rendered unfit either for drinking or the various other uses to which water is normally put. It is for this pollution that the appellants seek to recover in this action. From 1914 to 1930, the Louisville & Nashville Railroad Company operated a plant in the vicinity of the well where it creosoted wooden cross-ties. In 1930, the plant was leased to appellee, Bond Brothers, a corporation, which continued the business. To preserve the ties, creosote is administered by pressure in vats. The ties, still wet, are then removed from the vats, stacked, and allowed to drain upon the ground. Though the business has increased in volume, the routine of this process has remained the same. Appellee, after taking over the plant, sank two wells on the property and attempted to raise water from them without success by applying steam lines used in creosoting the ties. Later, it purchased land about the plant and removed timber from twenty-five acres adjacent to appellants' well by the use of dynamite. It is alleged that the operation of the plant was "negligently, carelessly, and maliciously" carried on, causing creosote to impregnate the ground to such an extent, either by seepage from the stacking of wet ties, or through fissures created in digging the wells or blasting the stumps, that the underground waters leading to appellants' spring were contaminated and the appellants were damaged in the amount of $25,000. (An additional $10,000 was later asked to indemnify appellants for losses suffered since the institution of this proceeding.) The Louisville & Nashville Railroad Company was originally joined as a co-defendant, but the appellants dismissed the cause of action against them. At the conclusion of appellants'

presentation of evidence, the trial court sustained appellee's motion for a peremptory instruction and the case is here on appeal from that judgment.

It is not denied that creosote was present in the appellants' spring; nor is it denied that the presence of creosote (a coal-tar derivitive containing certain harmful acids with an affinity for chlorine) rendered the water poisonous for human use.

While the duty of one who maintains deleterious substances on his property to prevent their escape is not an absolute one it may be observed that negligence, as ordinarily conceived, is not necessarily implicit in the liability. The idea is well expressed in Cooley on Torts (4th Ed.), Section 407, with a wealth of supporting authority:

"It is said in an early case that where one has filthy deposits on his premises, he whose dirt it is must keep it that it may not trespass. Therefore, if filthy matter from a privy or other place of deposit percolates through the soil of the adjacent premises, or breaks through into the neighbor's cellar, or finds its way into his well, this is a nuisance. Nor where this is the natural result of the deposit is the question of liability one depending on degrees of care to prevent it."

The extreme doctrine of Rylands v. Fletcher, 3 H. L. 330, has been expressly rejected in Kentucky. Triple-State Natural Gas & Oil Company v. Wellman, 114 Ky. 79, 70 S. W. 49, 24 Ky. Law Rep. 851, 1 Ann. Cas. 64; Long v. Louisville & N. R. Co., 128 Ky. 26, 107 S. W. 203, 32 Ky. Law Rep. 774, 13 L. R. A., N. S., 1063, 16 Ann. Cas. 673. It is observed in Harper on Torts, Section 180, that "nuisance differs from those cases which fall within the rule of Rylands v. Fletcher in that, by the doctrine of nuisance as developed by the American courts, the damage must be a continuing one rather than an isolated invasion of the plaintiff's interests."

There is no proof whatever of any negligence on the part of the appellee in the operation of its plant, in the digging of its two wells or in the blasting of the stumps on its premises. We need not concern ourselves, therefore, on this phase of the controversy. We are left, after all, solely with the question of whether or not the proof was sufficient to authorize the jury to deter-

mine that the creosote in appellants' well came from appellee's plant while under its control.

The evidence in this respect was purely circumstantial. The direction of flow of the water supplying appellants' well was not disclosed. Appellants undertook to show by process of elimination that appellee's plant was the only spot within one hundred miles where creosote was present in quantities and thus, by excluding others, to infer that appellee alone could be responsible. Their own witnesses, however, admit that creosote from appellee's plant was used by the city to spread upon its streets—several streets within a few hundred feet of the well. No attempt was made to show that these streets did not drain into the well.

Similarly, it was not shown to what extent, if at all, creosote had impregnated the ground about appellee's plant or how much was there as a result of the operation of the plant by the Louisville & Nashville Railroad between 1914 and 1930. Certainly appellee could not be held responsible for the seepage of creosote under the ground which had been left there by its predecessor. They were not joint tort-feasors. Watson v. Pyramid Oil Company, 198 Ky. 135, 248 S. W. 227. Appellant, W. E. Rogers, testified that it was his recollection that his attention was first called to the contamination of the water "about 1930." This may have been before or it may have been after appellee assumed control of the property. Undoubtedly, if the contamination appeared immediately after appellee took over the plant, it was due either to creosote left by the railroad company or else to some new method of operation of the plant by appellee, if it came from the plant at all.

The only steps taken by appellee which the proof shows might have changed conditions were the blasting of stumps at some little distance from the well and the digging of two wells on its own property. No experiment, apparently, was made by pouring copper sulphate solutions or other coloring matter into these openings, or otherwise, to discover whether or not there was any connection between these openings and appellants' well. It appears that the State Board of Health was consulted and that the county health officer inspected the well but none of the inspectors or officers was introduced as a witness. It does not appear that appellee ever made any objection to an examination of its property but if

it had appellants were not without remedy. Compare Edwards v. Sims, 232 Ky. 791, 24 S. W. (2d) 619

Appellants contented themselves with proving by a chemist that creosote was in the well and by various lay witnesses that the water was contaminated. That the creosote came from appellee's plant is left entirely to speculation or conjecture. This is not sufficient to authorize the submission of the question to a jury. Overton's Administratrix v. City of Louisville, 221 Ky. 289, 298 S. W. 968; North American Accident Insurance Company v. West, 245 Ky. 316, 53 S. W. (2d) 692.

Appellants cite but one case in their brief and that is Kinnaird v. Standard Oil Company, 89 Ky. 468, 12 S. W. 937, 11 Ky. Law Rep. 692, 7 L. R. A. 451, 25 Am. St. Rep. 545. However, the question determined in that case was not whether or not the contamination came from the defendant's premises—the Court found no trouble on that score. The real point decided was that a landowner could not contaminate subterranean water that flowed across its land, to the damage of its neighbor's spring, even though it might have appropriated this water to its own exclusive use had it so desired. This is a very different proposition from the question now before us. As pointed out above, it does not even appear that the water supplying appellants' well flows from the direction of appellee's land.

Appellants may have a cause of action against somebody—even appellees—but they have not proven one in this action. The trial court did not err in giving a peremptory instruction to the jury.

Judgment affirmed.