G. W. MORGAN and Wife, ALTA LEE MORGAN, v. HIGH PENN OIL COMPANY and SOUTHERN OIL TRANSPORTATION COMPANY, INC.

(Filed ·23 September, 1953.)

**1. Nuisance § 1—**

A nuisance *per se* or at law is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. A lawful enterprise cannot constitute a nuisance *per se* or at law.

**2. Same—**

A private nuisance *per accidens* may be intentional or unintentional. An unintentional non-trespassory invasion which results from conduct which is negligent, reckless or ultrahazardous creates liability when it substantially interferes with the use and enjoyment of the property of another.

**3. Same—**

The improper use of property, or a use which is improper or unreasonable under the circumstances of the particular case, which results in substantial interference with the use and enjoyment of the land of another, constitutes a private nuisance *per accidens*, and when such non-trespassory invasion is intentional in that the feasor acts for the purpose of causing it, or knows that it is resulting from his conduct, or knows that it is substantially certain to result from his conduct, negligence is not an element and the feasor may be held liable regardless of the degree of care or skill exercised by him to avoid injury. *Sic utere tuo ut alienum non laedas.*

**4. Same—**

Evidence tending to show that defendant, in operating its oil refinery, intentionally and unreasonably caused noxious gases and odors to escape into the air to such a degree as to impair in a substantial manner the plaintiffs' use and enjoyment of their land, is sufficient to overrule defendant's motion to nonsuit in an action by plaintiffs to recover temporary damages resulting from such nuisance.

**5. Injunctions § 4d—**

Evidence tended to show that defendant was maintaining a private nuisance causing irreparable injury to plaintiff by interfering with plaintiff's use and enjoyment of his land, and that defendant intended to operate its plant in the future in the same manner as in the past, is sufficient to establish the existence of an abatable private nuisance, entitling plaintiff to injunctive relief.

**6. Nuisance § 5: Trial § 23f—**

Where the allegations and the evidence are sufficient to make out a case against defendant for the intentional maintenance of a private nuisance, the fact that there is also allegation that defendant was negligent, without supporting evidence of any acts of negligence by defendant in the operation of its plant, does not justify nonsuit on the ground of variance.

**7. Same—**

Where the complaint alleges that one defendant actively participated with its codefendant in the construction and operation of an oil refinery constituting a private nuisance *per accidens*, but the proof is to the effect that it did not participate in the construction or operation of the plant but owned the land upon which the plant is situate and thus knowingly permitted its codefendant to operate the plant, such defendant's motion to nonsuit for variance must be allowed.

**8. Appeal and Error § 39f—**

An erroneous instruction on a material aspect of the case is not rendered harmless by the fact that in another portion of the charge the court may have given correct instructions to the jury on such phase, since it cannot be determined on appeal that the jury did not follow the erroneous instruction.

APPEAL by defendants from *Rudisill, J.,* and a jury, at January Term, 1953, of GUILFORD.

Civil action to recover temporary damages for a private nuisance, and to abate such nuisance by injunction.

The salient facts appear in the numbered paragraphs which immediately follow.

1. The plaintiffs G. W. Morgan and Alta Lee Morgan are husband and wife. They are seized in fee simple as tenants by the entireties of nine acres of land in the Friendship section of Guilford County.

2. The land of the plaintiffs is a composite tract, which they acquired by two separate purchases antedating 3 August, 1945. It contains a

dwelling-house, a restaurant, and accommodations for thirty-two habitable trailers. The dwelling-house existed at the time of the purchases of the plaintiffs, and has been occupied by them as their home since 3 August, 1945. The plaintiffs constructed the restaurant and the trailer accommodations immediately after they established their residence on the premises, and have been renting these improvements since their completion to third persons. They have been supplementing their income from these sources by taking lodgers in their dwelling.

3. From 3 August, 1945, until 10 September, 1952, the Southern Oil Transportation Company, which is a private corporation engaged in the transportation of petroleum products by motor tank trucks for hire, held the complete record title to an entire tract of land adjoining the nine acres of the plaintiffs. From 3 August, 1945, till the present time, the Southern Oil Transportation Company has devoted a portion of this tract to use as the site of its principal place of business.

4. The High Penn Oil Company is a private corporation, whose stockholders are identical with those of the Southern Oil Transportation Company. During 1950, the High Penn Oil Company erected an oil refinery upon the then unused portion of the tract of the Southern Oil Transportation Company to renovate used lubricating oil drained from motor vehicles. The oil refinery was completed 10 October, 1950.

5. The High Penn Oil Company operated the oil refinery at virtually all times between 10 October, 1950, and the date of the rendition of the judgment in this action.

6. The Southern Oil Transportation Company did not participate in the construction or operation of the oil refinery.

7. The Southern Oil Transportation Company permitted the High Penn Oil Company to occupy and use the portion of the tract containing the oil refinery from the beginning of the erection of that structure until 10 September, 1952.

8. Ten months after the commencement of this action, to wit, on 10 September, 1952, the Southern Oil Transportation Company, which still holds title to the portion of the tract containing its principal place of business, transferred the record title to the portion of the tract on which the oil refinery stands to the High Penn Oil Company. All the pleadings in this case antedated this transfer and in consequence do not mention it.

9. The oil refinery is approximately 1,000 feet from the dwelling of the plaintiffs.

10. These structures are situated within a radius of one mile of the oil refinery: a church; at least twenty-nine private dwellings; four tourist and trailer camps; a grocery store; two restaurants; a nursery appropriated to the propagation of young trees, shrubs, and plants; three motor vehicle service stations; two motor vehicle repair shops; a railroad track;

the terminus of a gasoline pipe line; numerous large storage tanks capable of storing sixty million gallons of gasoline; and the headquarters of at least four motor truck companies engaged in the transportation of petroleum products and other property for hire. Railway tank cars and motor tank trucks are filled with gasoline at the storage tanks for conveyance to various places at virtually all hours of the day and night.

11. On 2 October, 1951, the plaintiffs advised the Southern Oil Transportation Company and the High Penn Oil Company that the oil refinery created a nuisance by polluting the atmosphere of the neighborhood, and demanded that they forthwith put an end to the atmospheric pollution. The Southern Oil Transportation Company ignored this demand. The High Penn Oil Company continued its operation of the oil refinery.

12. On 7 November, 1951, the plaintiffs brought this action against the Southern Oil Transportation Company and the High Penn Oil Company, which are hereinafter called the defendants. The original pleadings are summarized in *Morgan v. Oil Company,* 236 N.C. 615, 73 S.E. 2d 477, where a previous attempted appeal by the defendants was dismissed.

13. The complaint was amended after the dismissal of the attempted appeal so as to claim temporary rather than permanent damages. It alleges in detail that the plaintiffs own and occupy their nine acres; that the nine acres adjoin the tract on which the oil refinery stands; that the Southern Oil Transportation Company owns the tract which contains the oil refinery; that the oil refinery was constructed and is operated by the defendants acting jointly; that the oil refinery is so constructed and operated as to constitute a nuisance in that it substantially pollutes the atmosphere of the entire neighborhood and thus injuriously affects the plaintiffs in the use and enjoyment of their land; that the defendants persist in maintaining the nuisance after notice from the plaintiffs to abate it; and that the plaintiffs will suffer an irreparable loss of their property rights if the nuisance is not abated. The complaint prays for temporary damages and an abatement of the alleged nuisance by injunction.

14. The defendants filed a joint answer denying all of the material allegations of the complaint other than the averment that the Southern Oil Transportation Company holds the record title to the land on which the oil refinery is located. The answer asserts in express terms that the Southern Oil Transportation Company did not participate in any way in the construction or operation of the oil refinery; that the High Penn Oil Company had exclusive control of the parcel of land on which the oil refinery now stands under a contract with the Southern Oil Transportation Company at the times named in the complaint; that the High Penn Oil Company was the sole builder of the oil refinery, and is its sole operator; that the oil refinery is a modern plant of the type in approved,

known and general use for renovating used lubricating oil; that the oil refinery is suited to the locality in which it stands; and that the oil refinery is not so constructed or operated as to pollute the atmosphere of the neighborhood or to inflict any injury upon the plaintiffs.

15. The action was tried on its merits before Judge Rudisill and a jury at the January Term, 1953, of the Superior Court of Guilford County. The evidence of the plaintiffs and consistent explanatory evidence presented by the defendants revealed the truth of the matter set out in paragraphs 1 to 11, both inclusive, of this statement of facts. There was sharp conflict, however, in the testimony of the parties bearing on the factual issue whether the oil refinery polluted the atmosphere of the neighborhood.

16. The evidence of the plaintiffs tended to show that for some hours on two or three different days during each week of its operation by the High Penn Oil Company, the oil refinery emitted nauseating gases and odors in great quantities; that the nauseating gases and odors invaded the nine acres owned by the plaintiffs and the other lands located within "a mile and three-quarters or two miles" of the oil refinery in such amounts and in such densities as to render persons of ordinary sensitiveness uncomfortable and sick; that the operation of the oil refinery thus substantially impaired the use and enjoyment of the nine acres by the plaintiffs and their renters; and that the defendants failed to put an end to the atmospheric pollution arising out of the operation of the oil refinery after notice and demand from the plaintiffs to abate it. The evidence of the plaintiffs tended to show, moreover, that the oil refinery was the only agency discharging gases or odors in annoying quantities into the air in the Friendship section.

17. The testimony of the defendants indicated that the High Penn Oil Company was the sole builder and operator of the oil refinery; that the High Penn Oil Company had the exclusive occupation and use of the portion of the tract containing the oil refinery rent-free from the beginning of the erection of that structure until 10 September, 1952, under an oral contract with the Southern Oil Transportation Company, which undertook to obligate the Southern Oil Transportation Company to convey that portion of the tract to the High Penn Oil Company, and to confer on the High Penn Oil Company the right to the possession of that portion of the tract pending the conveyance; that the oil refinery is a modern plant of the type in approved, known, and general use for renovating used lubricating oils; that the oil refinery is not so constructed or operated as to give out noxious gases or odors in annoying quantities; and that the oil refinery has not annoyed the plaintiffs or any other persons save on a single occasion when it suffered a brief mechanical breakdown.

18. The trial judge submitted these issues to the jury: (1) Are the plaintiffs, G. W. Morgan and wife, Alta Lee Morgan, owners as tenants by the entirety of the property described in paragraph 2 of the complaint? (2) Did the defendants maintain and operate the oil refinery referred to in the complaint so as to create a nuisance, as alleged? (3) What damages, if any, have the plaintiffs sustained up to the time of this trial? The jury answered the first issue "yes," the second issue "yes," and the third issue "$2,500.00." The trial judge entered a judgment on the verdict awarding the plaintiffs damages against both defendants in the sum of $2,500.00, and enjoining both defendants "from continuing the nuisance alleged in the complaint." Both defendants excepted and appealed, assigning errors.

*Frazier & Frazier for plaintiffs, appellees.*

*Roberson, Haworth & Reese and Brooks, McLendon, Brim & Holderness for the defendants, appellants.*

ERVIN, J. Each defendant assigns as error the disallowance of its motion for a compulsory nonsuit. We consider these assignments of error separately because the defendants urge different reasons to sustain their respective positions.

The High Penn Oil Company contends that the evidence is not sufficient to establish either an actionable or an abatable private nuisance. This contention rests on a twofold argument somewhat alternative in character. The High Penn Oil Company asserts primarily that private nuisances are classified as nuisances *per se* or at law, and nuisances *per accidens* or in fact; that when one carries on an oil refinery upon premises in his rightful occupation, he conducts a lawful enterprise, and for that reason does not maintain a nuisance *per se* or at law; that in such case the oil refinery can constitute a nuisance *per accidens* or in fact to the owner of neighboring land if, and only if, it is constructed or operated in a negligent manner; that there was no testimony at the trial tending to show that the oil refinery was constructed or operated in a negligent manner; and that consequently the evidence does not suffice to establish the existence of either an actionable or an abatable private nuisance. The High Penn Oil Company insists secondarily that the plaintiffs in a civil action can recover only on the case presented by their complaint; that the complaint in the instant action states a cause of action based solely on negligence; that there was no testimony at the trial indicating that the oil refinery was constructed or operated in a negligent manner; and that consequently the evidence is not sufficient to warrant the relief sought and obtained by the plaintiffs, even though it may be ample to establish a nuisance.

. The case on appeal discloses some substantial reasons for contesting .the soundness of the thesis of the High Penn Oil Company that there was no testimony at the trial tending to show that the oil refinery was constructed or operated in a negligent manner. Even expert witnesses for the defendants testified in substance on cross-examination that the oil refinery would not emit gases or odors in annoying quantities if it were "operated properly." We would be compelled, however, to reject the argument of the High Penn Oil Company on the present aspect of the appeal even if we should accept at face value its thesis that there was no testimony at the trial tending to show that the oil refinery was constructed or operated in a negligent manner.

The High Penn Oil Company asserts with complete correctness that private nuisances may be classified as nuisances *per se* or at law, and nuisances *per accidens* or in fact. A nuisance *per se* or at law is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. 39 Am. Jur., Nuisances, section 11; 66 C.J.S., Nuisances, section 3. Nuisances *per accidens* or in fact are those which become nuisances by reason of their location, or by reason of the manner in which they are constructed, maintained, or operated. *Swinson v. Realty Co.,* 200 N.C. 276, 156 S.E. 545; *Cherry v. Williams,* 147 N.C. 452, 61 S.E. 267, 125 Am. S. R. 566, 15 Ann. Cas. 715; *Dargan v. Waddill,* 31 N.C. 244, 49 Am. D. 421. The High Penn Oil Company also asserts with complete correctness that an oil refinery is a lawful enterprise and for that reason cannot be a nuisance *per se* or at law. *Waier v. Peerless Oil Co.,* 265 Mich. 398, 251 N.W. 552; *Midland Empire Packing Co. v. Yale Oil Corp. of S. D.,* 119 Mont. 36, 169 P. 2d 732; *Purcell v. Davis,* 100 Mont. 480, 50 P. 2d 255. The High Penn Oil Company falls into error, however, when it takes the position that an oil refinery cannot become a nuisance *per accidens* or in fact unless it is constructed or operated in a negligent manner.

Negligence and nuisance are distinct fields of tort liability. 39 Am. Jur., Nuisances, section 4. While the same act or omission may constitute negligence and also give rise to a private nuisance *per accidens* or in fact, and thus the two torts may coexist and be practically inseparable, a private nuisance *per accidens* or in fact may be created or maintained .without negligence. *Butler v. Light Co.,* 218 N.C. 116, 10 S.E. 2d 603; *Swinson v. Realty Co., supra;* 39 Am. Jur., Nuisances, section 24; 65 C.J.S., Negligence, section 1; 66 C.J.S., Nuisances, section 11. Most private nuisances *per accidens* or in fact are intentionally created or maintained, and are redressed by the courts without allegation or proof of negligence. *Godfrey v. Power Co.,* 190 N.C. 24, 128 S.E. 485; *Moran v. Pittsburgh-Des Moines Steel Co.,* 166 F. 2d 908; *King v. Columbian Carbon Co.,* 152 F. 2d 636; *E. Rauh & Sons Fertilizer Co. v. Shreffler,*

139 F. 2d 38; *Actiesselskabet Ingrid v. Central R. Co.,* 216 F. 72, L.R.A. 1916B, 716; *Terrell v. Alabama Water Service Co.,* 245 Ala. 68, 15 So. 2d 727; *Beam v. Birmingham Slag Co.,* 243 Ala. 313, 10 So. 2d 162; *Gus Blass Dry Goods Co. v. Reinman & Wolfort,* 102 Ark. 287, 143 S.W. 1087; *Curtis v. Kastner,* 220 Cal. 185, 30 P. 2d 26; *Kafka v. Bozio,* 191 Cal. 746, 218 P. 753, 29 A.L.R. 833; *Swift & Co. v. Peoples Coal & Oil Co.,* 121 Conn. 579, 186 A. 629; *Cunningham v. Wilmington Ice Mfg. Co.* (Del. Super.), 2 W. W. Harr. 229, 121 A. 654; *Dilucchio v. Shaw* (Del. Super.), 1 W. W. Harr. 509, 115 A. 771; *District of Columbia v. Totten,* 55 App. D. C. 312, 5 F. 2d 374, *certiorari* denied 269 U.S. 562, 46 S. Ct. 21, 70 L. Ed. 412; *Pitner v. Shugart Bros.,* 150 Ga. 340, 103 S.E. 791, 11 A.L.R. 1399; *Laflin & R. Powder Co. v. Tearney,* 131 Ill. 322, 23 N.E. 389, 7 L.R.A. 262, 19 Am. S. R. 34; *Menolascino v. Superior Felt & Bedding Co.,* 313 Ill. App. 557, 40 N.E. 813; *City of Lebanon v. Twiford,* 13 Ind. App. 384, 41 N.E. 844; *Ryan v. City of Emmetsburg,* 232 Iowa 600, 4 N.W. 2d 435; *Andrews v. Western Asphalt Paving Corporation,* 193 Iowa 1047, 188 N.W. 900; *Bowman v. Humphrey,* 132 Iowa 234, 109 N.W. 714, 6 L.R.A. (N.S.) 1111, 11 Ann. Cas. 131; *Carlson v. Mid-Continent Development Co.,* 103 Kan. 464, 173 P. 910, L.R.A. 1918F, 318; *Bailey v. Kelly,* 93 Kan. 723, 145 P. 556, L.R.A. 1916D, 1220, 86 Kan. 911, 122 P. 1027, 39 L.R.A. (N.S.) 378; *Rogers v. Bond Bros.,* 279 Ky. 239, 130 S.W. 2d 22; *O'Neal v. Southern Carbon Co.,* 211 La. 1075, 31 So. 2d 216; *Foley v. H. F. Farnham Co.,* 135 Me. 29, 188 A. 708; *Toy v. Atlantic Gulf & Pacific Co.,* 176 Md. 197, 4 A. 2d 757; *Bern v. Boston Consol. Gas Co.,* 310 Mass. 651, 39 N.E. 2d 576; *Ferriter v. Herlihy,* 287 Mass. 138, 191 N.E. 352; *Hakkila v. Old Colony Broken Stone & Concrete Co.,* 264 Mass. 447, 162 N.E. 895; *Wilkinson v. Detroit Steel & Springs Works,* 73 Mich. 405, 41 N.W. 490; *H. Christianson & Sons v. City of Duluth,* 225 Minn. 475, 31 N.W. 2d 270; *Johnson v. Fairmont,* 188 Minn. 451, 247 N.W. 572; *Pearson v. Kansas City,* 331 Mo. 885, 55 S.W. 2d 485; *Boyle v. Neisner Bros.,* 230 Mo. App. 90, 87 S.W. 2d 227; *Jeffers v. Montana Power Co.,* 68 Mont. 114, 217 P. 652; *Toft v. City of Lincoln,* 125 Neb. 498, 250 N.W. 748; *Brownsey v. General Printing Ink Corporation,* 118 N.J.L. 505, 193 A. 824; *Dixon v. New York Trap Rock Corporation,* 293 N.Y. 509, 58 N.E. 2d 517, motion for reargument denied, 294 N.Y. 654, 60 N.E. 2d 385; *Hogle v. H. H. Franklin Mfg. Co.,* 199 N.Y. 388, 92 N.E. 794, 32 L.R.A. (N.S.) 1038, affirming judgment, 128 App. Div. 403, 112 N.Y.S. 881; *Bohan v. Port Jervis Gas-Light Co.,* 122 N.Y. 18, 25 N.E. 246, 9 L.R.A. 711; *Kremer v. City of Uhrichsville,* 67 Ohio App. 61, 35 N.E. 2d 973; *Ohio Stock Food Co. v. Gintling,* 22 Ohio App. 82, 153 N.E. 341; *Vantier v. Atlantic Refining Co.,* 231 Pa. 8, 79 A. 814; *Gavigan v. Atlantic Refining Co.,* 186 Pa. 604, 40 A. 834; *Rogers v. Philadelphia Traction Co.,* 182 Pa.

473, 38 A. 399, 61 Am. S. R. 716; *Rose v. Standard Oil Co. of New York,* 56 R.I. 272, 185 A. 251, reargument denied, 56 R.I. 472, 188 A. 71; *Braun v. Iannotti,* 54 R.I. 469, 175 A. 656; *Frost v. Berkeley Phosphate Co.,* 42 S.C. 402, 20 S.E. 280, 46 Am. S. R. 736, 26 L.R.A. 693; *Cuffman v. City of Nashville,* 26 Tenn. App. 367, 175 S.W. 2d 331; *Soap Corp. of America v. Balis* (Tex. Civ. App.), 223 S.W. 2d 957; *Columbian Carbon Co. v. Tholen* (Tex. Civ. App.), 199 S.W. 2d 825; *G. L. Webster Co. v. Steelman,* 172 Va. 342, 1 S.E. 2d 305; *Terrell v. Chesapeake & O. R. Co.,* 110 Va. 340, 66 S.E. 55, 32 L.R.A. (N.S.) 371; *Bartel v. Ridgefield Lumber Co.,* 131 Wash. 183, 229 P. 306, 37 A.L.R. 683; *Flanagan v. Gregory & Poole, Inc.,* ..... W. Va. ...., 67 S.E. 2d 865; *Wilson v. Phoenix Powder Mfg. Co.,* 40 W. Va. 413, 21 S.E. 1035, 52 Am. S. R. 890; *Dolata v. Berthelet Fuel & Supply Co.,* 254 Wis. 194, 36 N.W. 2d 97; *Brown v. Milwaukee Terminal Ry. Co.,* 199 Wis. 575, 227 N.W. 385, reversing 199 Wis. 575, 224 N.W. 748.

The law of private nuisance rests on the concept embodied in the ancient legal maxim *Sic utere tuo ut alienum non laedas,* meaning, in essence, that every person should so use his own property as not to injure that of another. *Barger v. Barringer,* 151 N.C. 433, 66 S.E. 439, 25 L.R.A. (N.S.) 831, 16 Ann. Cas. 472; *Tennessee Coal, Iron & R. Co. v. Hartline,* 244 Ala. 116, 11 So. 2d 833; *Beam v. Birmingham Slag Co., supra; G. L. Webster Co. v. Steelman, supra.* As a consequence, a private nuisance exists in a legal sense when one makes an improper use of his own property and in that way injures the land or some incorporeal right of one's neighbor. *King v. Ward,* 207 N.C. 782, 178 S.E. 577; *Holton v. Oil Co.,* 201 N.C. 744, 161 S.E. 391; 39 Am. Jur., Nuisances, section 3.

Much confusion exists in respect to the legal basis of liability in the law of private nuisance because of the deplorable tendency of the courts to call everything a nuisance, and let it go at that. *Moran v. Pittsburgh-Des Moines Steel Co., supra; Taylor v. City of Cincinnati,* 143 Ohio St. 426, 55 N.E. 2d 724. The confusion on this score vanishes in large part, however, when proper heed is paid to the sound propositions that private nuisance is a field of tort liability rather than a single type of tortious conduct; that the feature which gives unity to this field of tort liability is the interest invaded, namely, the interest in the use and enjoyment of land; that any substantial non-trespassory invasion of another's interest in the private use and enjoyment of land by any type of liability forming conduct is a private nuisance; that the invasion which subjects a person to liability for private nuisance may be either intentional or unintentional; that a person is subject to liability for an intentional invasion when his conduct is unreasonable under the circumstances of the particular case; and that a person is subject to liability for an unintentional invasion when his conduct is negligent, reckless or ultrahazardous. See

7—238

Scope and Introduction Note to Chapter 40, American Law Institute's Restatement of the Law of Torts; *Moran v. Pittsburgh-Des Moines Steel Co., supra; Soukoup v. Republic Steel Corp.,* 78 Ohio App. 87, 66 N.E. 2d 334; 66 C.J.S., Nuisances, section 8.

An invasion of another's interest in the use and enjoyment of land is intentional in the law of private nuisance when the person whose conduct is in question as a basis for liability acts for the purpose of causing it, or knows that it is resulting from his conduct, or knows that it is substantially certain to result from his conduct. Restatement of the Law of Torts, section 825; *E. Rauh & Sons Fertilizer Co. v. Shreffler, supra; Harman v. City of Buffalo,* 214 N.Y. 316, 108 N.E. 451; *Bohan v. Port Jervis Gas-Light Co., supra; Columbian Carbon Co. v. Tholen, supra.* A person who intentionally creates or maintains a private nuisance is liable for the resulting injury to others regardless of the degree of care or skill exercised by him to avoid such injury. *Judson v. Los Angeles Suburban Gas Co.,* 157 Cal. 168, 106 P. 581, 26 L.R.A. (N.S.) 183, 21 Ann. Cas. 1247; *Blackman v. Iowa Union Electric Co.,* 234 Iowa 859, 14 N.W. 2d 721; *Susquehanna Fertilizer Co. v. Spangler,* 86 Md. 562, 39 A. 270, 63 Am. S. R. 533; *Robinson v. Westman,* 224 Minn. 105, 29 N.W. 2d 1; *Bollinger v. Mungle* (Mo. App.), 175 S.W. 2d 912; *Powell v. Brookfield Pressed Brick & Tile Mfg. Co.,* 104 Mo. App. 713, 78 S.W. 646; *Wallace & Tiernan Co. v. U. S. Cutlery Co.,* 97 N. J. Eq. 408, 128 A. 872, decree affirmed, 98 N. J. Eq. 699, 130 A. 920; *Monaco v. Comfort Bus Line,* 134 N.J.L. 553, 49 A. 2d 146; *Jutte v. Hughes,* 67 N.Y. 267; *Whaley v. Citizens' Nat. Bank,* 28 Pa. Super. 531; *Western Texas Compress Co. v. Williams* (Tex. Civ. App.), 124 S.W. 493; *Flanagan v. Gregory & Poole, Inc., supra;* 39 Am. Jur., Nuisances, section 24. One of America's greatest jurists, the late *Benjamin N. Cordozo,* made this illuminating observation on this aspect of the law: "Nuisance as a concept of the law has more meanings than one. The primary meaning does not involve the element of negligence as one of its essential factors. One acts sometimes at one's peril. In such circumstances, the duty to desist is absolute whenever conduct, if persisted in, brings damage to another. Illustrations are abundant. One who emits noxious fumes or gases day by day in the running of his factory may be liable to his neighbor though he has taken all available precautions. He is not to do such things at all, whether he is negligent or careful." *McFarlane v. City of Niagara Falls,* 247 N.Y. 340, 160 N.E. 391.

When the evidence is interpreted in the light most favorable to the plaintiffs, it suffices to support a finding that in operating the oil refinery the High Penn Oil Company intentionally and unreasonably caused noxious gases and odors to escape onto the nine acres of the plaintiffs to such a degree as to impair in a substantial manner the plaintiffs' use and

MORGAN v. OIL CO.

enjoyment of their land. This being so, the evidence is ample to establish the existence of an actionable private nuisance, entitling the plaintiffs to recover temporary damages from the High Penn Oil Company. *Webb v. Chemical Co.,* 170 N.C. 662, 87 S.E. 633; *Duffy v. Meadows,* 131 N.C. 31, 42 S.E. 460; *Hyatt v. Myers,* 71 N.C. 271; *Bohan v. Port Jervis Gas-Light Co., supra;* 39 Am. Jur., Nuisances, sections 58, 59; 66 C.J.S., Nuisances, sections 23, 60. When the evidence is taken in the light most favorable to the plaintiffs, it also suffices to warrant the additional inferences that the High Penn Oil Company intends to operate the oil refinery in the future in the same manner as in the past; that if it is permitted to carry this intent into effect, the High Penn Oil Company will hereafter cast noxious gases and odors onto the nine acres of the plaintiffs with such recurring frequency and in such annoying density as to inflict irreparable injury upon the plaintiffs in the use and enjoyment of their home and their other adjacent properties; and that the issuance of an appropriate injunction is necessary to protect the plaintiffs against the threatened irreparable injury. This being true, the evidence is ample to establish the existence of an abatable private nuisance, entitling the plaintiffs to such mandatory or prohibitory injunctive relief as may be required to prevent the High Penn Oil Company from continuing the nuisance. *Barrier v. Troutman,* 231 N.C. 47, 55 S.E. 2d 933; *Pruitt v. Bethell,* 174 N.C. 454, 93 S.E. 945; *Hyatt v. Myers, supra; Hedrick v. Tubbs,* 120 Ind. App. 326, 92 N.E. 2d 561; *Kepler v. Industrial Disposal Co.,* 84 Ohio App. 80, 85 N.E. 2d 308; 39 Am. Jur., Nuisances, sections 156, 158, 172; 66 C.J.S., Nuisances, sections 115, 116, 134.

The contention of the High Penn Oil Company that the complaint states a cause of action based solely on negligence is untenable. To be sure, the plaintiffs assert that the defendants were "negligent and careless" in specified particulars in constructing and operating the oil refinery. When the complaint is construed as a whole, however, it alleges facts which show a private nuisance resulting from an intentional and unreasonable invasion of the plaintiffs' interest in the use and enjoyment of their land. *Bohan v. Port Jervis Gas-Light Co., supra; Braun v. Iannotti, supra; Flanagan v. Gregory & Poole, Inc., supra;* 39 Am. Jur., Nuisances, section 142.

For the reasons given, the evidence is sufficient to withstand the motion of the High Penn Oil Company for a compulsory nonsuit.

The reverse is true with respect to the motion of the Southern Oil Transportation Company. The complaint charges the Southern Oil Transportation Company with responsibility for the nuisance alleged solely upon the theory that it actively participated in the construction and operation of the oil refinery. According to all the evidence, the Southern Oil Transportation Company had no part in these undertakings.

The evidence for the plaintiffs indicates that the Southern Oil Transportation Company was the absolute owner of the land on which the oil refinery stands until 10 September, 1952; that it possessed the consequent power to control the use of the land until that date; and that it knowingly permitted the High Penn Oil Company to operate the oil refinery upon the land owned and controlled by it down to 10 September, 1952, in such a manner as to constitute a nuisance despite notice and protest from the plaintiffs. The complaint does not invoke this evidence as a foundation of liability on the part of the Southern Oil Transportation Company for the nuisance alleged. *McManus v. Railroad,* 150 N.C. 655, 64 S.E. 766; *Maynard v. Carey Const. Co.,* 302 Mass. 530, 19 N.E. 2d 304; 66 C.J.S., Nuisances, section 88. These things being true, there is a fatal variance between the pleading and the proof of the plaintiffs with respect to the Southern Oil Transportation Company, and the action ought to have been involuntarily nonsuited as to the Southern Oil Transportation Company in the court below under the fundamental procedural rule that a recovery cannot be had in a civil action on the basis of matters alleged, but not proved, or proved but not alleged. *Wilkins v. Finance Co.,* 237 N.C. 396, 75 S.E. 2d 118; 66 C.J.S., Nuisances, sections 126, 147.

While the evidence is ample to overcome its motion for a compulsory nonsuit, the High Penn Oil Company is entitled to have the cause tried anew because of prejudicial error in the instruction covered by its sixteenth assignment of error. This portion of the charge is thus phrased: "The court charges you . . . that before you can find that the defendants operated and maintained their plant and premises as a nuisance, you must find from the evidence and by the greater weight thereof that their operation injuriously affected the health, safety, morals, good order, or general welfare of the community, or infringed upon the property rights of the individual complainants. If you so find from the evidence and by its greater weight, you will answer the second issue 'Yes.' If you fail to so find, you will answer it 'No.'"

The core of this instruction is lifted bodily out of its context in *Kass v. Hedgpeth,* 226 N.C. 405, 38 S.E. 2d 164, and is without relevancy to the pleadings, the testimony, and the issues in the instant action. What has already been said respecting the basis of liability in the law of private nuisance makes it obvious that the instruction under scrutiny conveyed to the jury a rather vague and a quite incorrect notion as to the essential elements of a private nuisance. The instruction is not robbed of its prejudicial character by the fact that the court may have given the jury correct instructions on this phase of the case in other parts of the charge. "It is elementary that where there are conflicting instructions with respect to a material matter—one correct and the other not—a new trial must be granted, as the jurors are not supposed to know which one is

correct, and we cannot say they did not follow the erroneous instruction."
*Hubbard v. R. R.,* 203 N.C. 675, 166 S.E. 802.

New trial as to the High Penn Oil Company.

Reversed as to the Southern Oil Transportation Company.