### FROST v. BERKELEY PHOSPHATE COMPANY.

1. CHARGING JURIES—LAWFUL USE.—In instructing the jury that defendant would be liable to plaintiff for injury resulting to plaintiff's property from defendant's unreasonable and unlawful use of a phosphate factory on its adjoining land, without declaring what was a reasonable and lawful use, the trial judge erred in submitting. a question of law to the jury.

2. LAWFUL BUSINESS—INJURY TO OTHERS.—If the owner of land uses it for the prosecution of a business from which injury to his neighbor's property will necessarily or probably ensue, he is liable for damages so resulting, even though he may have used reasonable care in the prosecution of such business—as, in this case, a phosphate factory generating deleterious gases and vapors.[1]

3. IBID.—IBID.—OTHER CAUSES.—The trial judge erred in charging the jury, that "if the injury is in part the result of vapors and in part the result of other causes, the verdict must be for defendant, unless the testimony establishes that the injury would not have resulted except for the vapor charged as causing the alleged injury." Such charge was erroneous, or at least misleading, the rule being that he who does an injury is liable for the damages caused thereby, even if the party injured has also sustained injury from other causes.

4. CHARGING JURIES—PROOF OF NEGATIVE.—Moreover, this charge imposed upon plaintiff the burden of proving a negative.

---

[1] Nuisances committed in carrying on a lawful business are discussed in a note to *Bohan* v. *Port Jervis Gas Light Co.* (N. Y.), 9 L. R. A., 711. That was a case of noxious gases. So, also, were *Fogarty* v. *Junction City Pressed Brick Company* (Kan.), 18 L. R. A., 756, and *Robb* v. *Carnegie* (Pa.), 14 L. R. A., 329.—REPORTER.

Before Aldrich, J., Charleston, February, 1893.

Action by Thomas Frost against the Berkeley Phosphate Company, commenced November 5, 1890. The judge charged the jury as follows:

This is an action brought by Mr. Thomas Frost against the Berkeley Phosphate Company. You have heard the complaint read, which states the cause of action. You have heard the defendant's answer read, which is the answer to the allegations stated in the complaint. Those allegations and denials raise the issues which you are to pass upon. Among the issues that you will have to determine will be, what damage, if any, has the plaintiff sustained by reason of the escape of gases, vapors, and those matters that are thrown off from the phosphate works, if they are thrown off, and in considering that you are to be guided by what we term the preponderance of the testimony. The plaintiff comes in, and the burden of proof is upon him to sustain the case by the allegations that he has made. The defendant is not called upon to speak in his defence until the plaintiff has made out a case. When that is done, then the defendant introduces his testimony, and the jury then are controlled by what is termed the preponderance of the evidence.

You have heard counsel speak in their arguments of nuisances. In ordinary acceptation, we use the term nuisance in referring to an offence that is indictable. To illustrate: Stopping the roads up, digging a ditch across the road, is a nuisance. When that is considered, the term as applied here is restricted. A nuisance that affects injuriously one or more or few individuals may be a private nuisance, and that is based upon this doctrine. A man has the right to engage in any lawful occupation or to use his premises in any proper and lawful industry; but in the exercise of his rights he must so use his property as not to unlawfully and unreasonably injure his neighbor's property. If he does so use his property in an unlawful and unreasonable manner as to injure his neighbor, then as to that neighbor that would be a nuisance, and for that nuisance that neighbor would have the right to bring action in the civil court, and demand compensation in the way of damages.

The Berkeley Phosphate Company, it is alleged, is a corporation under the laws of this State. That is admitted. There is no allegation that the Berkeley Phosphate Company is engaged in an unlawful business in itself, that is, in the sense that they are engaged in a business which is wrong; but the plaintiff alleges, that while they are engaged in that lawful business they are not so conducting their business as they should, and there comes the gist of the case. Is the Berkeley Phosphate Company so operating and conducting its business as, by the escape of these gases and vapors, as alleged in this complaint, to injure in an unreasonable and unlawful manner Mr. Frost's property? Well, you heard the testimony, and I don't know if I can state the rule any plainer than I have. If the Berkeley Phosphate Company is allowing these acids and gases to escape, and they are actually injuring Mr. Frost's property, well, then, Mr. Frost would be entitled to compensation. But, to enable the plaintiff to recover, the injury must be a positive, direct injury, and the damage must be actual and substantial. Further, it must be the result of the nuisance, that is, the act of the phosphate company as charged, and not the result of other artificial causes. If the injury is in part the result of vapors, as charged in the complaint, and in part the result of other causes, the verdict must be for the defendant, unless the testimony establishes that the injury would not have resulted except for the vapor charged as causing the alleged injury. The law only deals with real and substantial injuries, and such as arise from the wrongful use of property, and will not lend its aid to check one engaged in a lawful pursuit, simply because his neighbor is annoyed, unless the use complained of, that is, the conduct of his neighbor, is both in violation of the neighbor's rights and unreasonable and unlawful, as I have explained to you.

This action, in my opinion, is not one sounding in punitive damages, that is, what we call "smart money;" it is for compensation, that which will make the plaintiff whole, if you find that he has sustained any injuries. I think that about covers all that I desire to say to the jury. With all due respect to the counsel who made that argument, I think that when you

come down to private nuisances, or private damages, that numbers have nothing to do with it. When one man injures his neighbor in an unlawful and unreasonable manner, as I have endeavored to explain to you, he must make him answer by compensating him for damages. You can't find a verdict for more than five thousand dollars, because that is the amount claimed, and your damages cannot come down below the 5th November, 1890. Damage that he has sustained will lead up to and prior to November 5th, 1890. Whatever you think was the damage he sustained at that time, from injuries, if you find any or not, in destroying his trees, grasses, vines, or injuries to the property itself, you state in your verdict—if you find that the plaintiff has failed to make out his case by the preponderance of the testimony, or that these gases that escape from the defendant's factory, if that escape was not the approximate cause of the damage alleged to have been sustained, your verdict would be out and out for the defendant.

Verdict was for defendant, and plaintiff appealed on the following grounds:

1. Because the presiding judge charged as follows: "A man has the right to engage in any lawful occupation or to use his premises in any proper and lawful industry, but in the exercise of his rights he must so use his property as not to *unlawfully and unreasonably* injure his neighbor's property. If he does so use his property *in an unlawful and unreasonable manner* as to injure his neighbor, then as to that neighbor that would be a nuisance, and for that nuisance that neighbor would have the right to bring action in the civil court, and demand compensation in the way of damages. * * * The law * * will not lend its aid to check one engaged in a lawful pursuit, simply because his neighbor is annoyed, unless the use complained of, that is, the conduct of his neighbor, is *both in violation of the neighbor's rights, and unreasonable and unlawful,* as I have explained to you. * * * When one man injures his neighbor *in an unlawful and unreasonable manner,* as I have endeavored to explain to you, he must make him answer by compensating him for damages." In which his honor erred, it is submitted, by instructing the jury

that a man would not have the right to bring such an action, and, therefore, could not recover damages, unless the defendant used his property *in an unlawful and unreasonable manner*, and so as to *unlawfully and unreasonably* injure his neighbor. Whereas, it is submitted, that it is the injury, *by itself and in fact*, not its *unlawfulness and unreasonableness*, nor the use of property *in an unlawful and unreasonable manner*, which gives the right of action.

2. Because the presiding judge charged as follows: "There is no allegation that the Berkeley Phosphate Company is engaged in an unlawful business in itself, that is, in the sense that they are engaged in a business which is wrong, but the plaintiff alleges, that while they are engaged in that lawful business, they are not so conducting their business as they should, and there comes the gist of the case. Is the Berkeley Phosphate Company so operating and conducting its business, as, by the escape of these gases and vapors, as alleged in this complaint, to injure in an *unreasonable and unlawful manner* Mr. Frost's property? * * * The law * * will not lend its aid to check one engaged in a lawful pursuit, simply because his neighbor is annoyed, unless the use complained of, that is, the conduct of his neighbor, is *both in violation of the neighbor's rights, and unreasonable and unlawful*, as I have explained to you. * * * When one man injures his neighbor *in an unlawful and unreasonable manner*, as I have endeavored to explain to you, he must make him answer by compensating him for damages." In which his honor erred, it is submitted, (*a*) in stating to the jury that the plaintiff alleged that the defendants were engaged in a *lawful* business; (*b*) by instructing the jury that the gist of the case was whether the Berkeley Phosphate Company were so operating and conducting their business as, by the escape of the gases and vapors, to injure *in an unreasonable and an unlawful manner* Mr. Frost's property; whereas, it is submitted, that it is the injury *by itself* and *in fact*, not injury *in an unreasonable and unlawful manner*, which is the gist of such a case; (*c*) and in leaving it to the jury to decide what is *unreasonable and unlawful*.

3. Because the presiding judge charged as follows: "To enable the plaintiff to recover, the injury must be a positive, direct injury, and the damage must be actual and substantial. Fur-

ther, it must be the result of the nuisance, that is, the act of the phosphate company as charged, and not the result of other artificial causes. *If the injury is in part the result of vapors, as charged in the complaint, and in part the result of other causes, the verdict must be for the defendant, unless the testimony establishes that the injury would not have resulted except for the vapor charged as causing the alleged injury.*" In which his honor erred, it is submitted, by instructing the jury as he did in the said last sentence italicized.

*Messrs. McCradys & Bacot,* for appellant, cited 1 Com. Dig., 429; 93 E. C. L. R., 344; 7 H. & N., 167; 116 E. C. L. R., 1093; 11 H. L. C., 641; Wood Nuis., §§ 485, 489, 492; 5 Am. & Eng. Enc. L., 3, note 1, and 4, note 1; 4 Wait Act. & Def., 749, 750; 73 Md., 268; 23 Atl. Rep., 846. Wood Nuis., § 472, is not sustained by the cases cited, and is contradicted in § 491. See, too, 16 Am. & Eng. Enc. L., 925, note; 22 S. C., 477; 36 *Id.*, 96.

*Messrs. Mitchell & Smith,* contra, cited Bish. Non-Cont. L., § 11; 1 Sedg. Dam., § 32; 2 Barb., 165; 5 *Id.*, 79; 5 Am. & Eng. Enc. L., 68; L. R. 1 Exch., 265; L. R. 3 H. L., 330; 51 N. Y., 486; 14 Am. & Eng. Corp. Cas., 656, 661; 11 Cush., 221; 67 N. Y., 336; 70 *Id.*, 132; 101 *Id.*, 98; 1 Bing., 213; 11 C. B. N. S., 508; 32 Q. B., 919; 5 Seld., 444; 63 N. Y., 576; Wait Act. & Def., 748; Bishop Non-Cont. L., § 36; 22 N. E. Rep., 989; 15 Wall., 538; 4 South. Rep., 713; 11 Rich., 217; 22 S. C., 476; 13 *Id.*, 97; Wood Nuis., p. 24; *Ibid.*, §§ 539, 542; 25 E. C. L. R., 443; 22 Atl. Rep., 758; 21 S. C., 400; *Ibid.*, 470; Cool. Torts, p. 69.

October 22, 1894. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. The plaintiff brought this action to recover damages from the defendant company for the injury done to plaintiff and his property by reason of the noxious gases generated in defendant's mill, located very near by, and at some points adjoining, plaintiff's land, and erected for the purpose of manufacturing commercial fertilizers. It is alleged in the complaint that in the preparation and manufacture of these fertilizers "one of the elements in the preparation is the manufacture, in very large quantities, of sulphuric acid,

in the manufacture of which acid are produced certain gases, fumes, or vapors, of very injurious results to vegetable life, in some cases destructive of it altogether, and also highly deleterious to animal life;" and it is further alleged that these noxious gases, fumes, and vapors thus escaping from defendant's mill have greatly injured, and to some extent entirely destroyed, plaintiff's crops and other vegetation growing on his land, and have proved so detrimental to health as to render plaintiff's premises unfit for habitation. The plaintiff offered testimony tending to prove these allegations, and, on the other hand, testimony was offered by the defendant tending to contradict the same. The case was submitted to the jury, under the charge of his honor, Judge Aldrich, who found a verdict for the defendant, and plaintiff appeals upon the several grounds set out in the record, which practically impute two errors to the charge, which will hereinafter be stated; but we think it due to the Circuit Judge that his charge, as well as the exceptions thereto, should be incorporated in the report of the case.

The first error imputed to the Circuit Judge is in charging the jury as follows: "A man has the right to engage in any lawful occupation, or to use his premises in any proper and lawful industry; but in the exercise of his rights, he must so use his property as not to *unlawfully and unreasonably* injure his neighbor's property. If he does so use his property in an *unlawful and unreasonable* manner, as to injure his neighbor, then, as to that neighbor, that would be a nuisance, and for that nuisance that neighbor would have the right to bring action in the civil court and demand compensation in the way of damages;" and in stating to the jury as the gist of this case: "Is the Berkeley Phosphate Company so operating and conducting its business as, by the escape of these gases and vapors, as alleged in this complaint, to injure, in an *unreasonable and unlawful manner*, Mr. Frost's property?" We have italicized the objectionable words in these two extracts from the judge's charge, simply for the purpose of indicating the point of the objection.

It seems to us that this charge is open to two objections: 1st. That it left to the jury the decision of a question of law; for we

do not find anywhere in the charge anything to indicate what would be an unreasonable or an unlawful use of the defendant's premises, or what would constitute an unreasonable or an unlawful injury to the plaintiff's property, and the jury were left without any rule or principle by which to determine whether Mr. Frost's property was unreasonably or unlawfully injured by the defendant. If, therefore, the jury had been ever so well satisfied that the property of the plaintiff had been very seriously injured by the use to which defendant had put its own property, they could not, under this instruction, have found for the plaintiff without further determining the question, whether the defendant had so used its own property as to *unreasonably and unlawfully* injure the property of the plaintiff; for the determination of which they had been furnished with no rule or principle by the Circuit Judge. How the jury could determine whether the defendant had made a *lawful* use of its premises, without any instruction as to what would be a lawful use, it is difficult to understand.

The second objection to this charge is, as it seems to us, that it unwarrantably limits the operation of the maxim, *Sic utere tuo ut alienum non lædas,* so as to allow the owner of a tract of land to so use his own land in the prosecution of any lawful business as would necessarily or probably injure his neighbor, provided he takes all reasonable care to prevent such injury. This we do not understand to be the law. On the contrary, we think if one uses his own land for the prosecution of some business from which injury to his neighbor would either necessarily or probably ensue, he is liable if such injury does result, even though he may have used reasonable care in the prosecution of such business. This doctrine is supported not only by reason, but by the weight of authority, as is shown by the cases cited by appellant's counsel. The rule is well stated in a note in 5 Am. & Eng. Enc. Law, at page 3, in these words: "In general, if a voluntary act, lawful in itself, may naturally result in the injury of another, or the violation of his legal rights, the actor must at his peril see to it that such injury or such violation does not follow, or he must expect to respond

in damages therefor; and this is true regardless of the motive or the degree of care with which the act is performed.''

In the case of the *Susquehanna Fertilizer Company* v. *Malone,* 73 Md., 268 (25 Am. St. Rep., 595), a case very much like the one under consideration, it was held that: ''No principle is better settled than that where a trade or business is carried on in such a manner as to interfere with the reasonable and comfortable enjoyment by another of his property, or which occasions material injury to the property itself, a wrong is done to the neighboring owner for which an action will lie; and this, too, without regard to the locality where such business is carried on; and this, too, although the business may be a lawful business, and one useful to the public, and although the best and most approved appliances and methods may be used in the conduct and management of the business''—citing *Attorney General* v. *Colney Hatch Lunatic Asylum,* L. R. 4 Ch. App., 147; *Pinckney* v. *Evans,* 4 L. T. N. S., 741; *Stockport Water Works* v. *Potter,* 7 Hurl. & N., 160; *Rylands* v. *Fletcher,* L. R., 3 Eng. Ir. App., 330. Again, in the same case, it is said: ''We cannot agree with the appellant that the court ought to have directed the jury to find whether the place where the factory was located was a convenient and proper place for the carrying on of the appellant's business, *and whether such a use of his property was a reasonable use,* and if they should so find, the verdict must be for the defendant * * * Nor can any use of one's own land be said to be a reasonable use which deprives an adjoining owner of the lawful use and enjoyment of his property;'' and the learned judge proceeds to show that the only case which gives countenance to the view contended for by appellant is *Hole* v. *Barlow,* 4 Com. B. N. S., 334, which had been distinctly repudiated in the subsequent cases of *Bamford* v. *Turnley,* 31 L. J. Q. B., 286, and *Tipping* v. *St. Helen Smelting Co.,* 4 Best & S., 608.

In *Wilson* v. *City of New Bedford,* 108 Mass., 261 (11 Am. Rep., 352), the case of *Rylands* v. *Fletcher, supra,* afterwards carried to the House of Lords, which respondent contends has been repudiated in this country, was cited with approval, and the following language of Lord Cranworth used in that case (3 H. L. Cases, 330,) is quoted in the Massachusetts case: ''If a per-

son brings or accumulates on his land anything which, if it should escape, may cause damage to his neighbor, he does so at his peril.  If it does escape and cause damage, he is responsible, however careful he may have been, and whatever precautions he may have taken to prevent the damage." In *Bamford* v. *Turnley, supra,* the jury were instructed that if they thought the spot was convenient and proper, and that the use by the defendant of his property was, under the circumstances, a rea-sonable use of his own land, he would be entitled to a verdict, but upon appeal these instructions were held to be erroneous, and that it was no answer in an action for a nuisance creating actual annoyance and discomfort in the enjoyment of neighbor-ing property, that the injury resulted from a reasonable use of the property.

In *Cahill* v. *Eastman,* 18 Minn., 324 (10 Am. Rep., 184), it was held that a person who uses his property in such a manner as necessarily tends to injure the property of another, is liable to that other for any injury which may result from such use, without regard to considerations of care and skill therein.  In that case the court quotes the following language from Bl. Com., book 3, chap. 13: "If one erects a smelting house for lead [or for the same reason a fertilizer factory in which sulphuric acid is generated] so near the land of another that the vapor and smoke kills his corn and grass, and damages his cattle therein, this is held to be a nuisance.  And by consequence it follows that if one does any other act in itself lawful, which yet being done in that place necessarily tends to the damage of another's property, it is a nuisance; for it is incumbent upon him to find some other place to do that act, where it will be less offensive." In that case, also, *Rylands* v. *Fletcher* was recognized.

In the case of *Losee* v. *Buchanan,* 51 N. Y., 476 (10 Am. Rep., 623), relied on by respondent, the action was to recover damages for injury done to plaintiff's property by the explosion of a steam boiler used on defendant's premises, and it was held that the use of such a steam boiler in such a manner that it is not a nuisance, would not render defendant liable without proof of fault or negligence on his part.  But that was a very different case from this, for there, there was no evidence that the use of a steam

boiler on defendant's premises would necessarily or probably cause any injury to a neighboring proprietor, while here there is evidence tending to show that a fertilizer factory in which sulphuric acid is generated will necessarily, or at least very probably, cause injury to the neighboring proprietors by reason of the escape of noxious and poisonous gases. In that case it was stated, incorrectly as we think, that the case of *Rylands* v. *Fletcher* "is in direct conflict with the law as settled in this country." But the same court at the same term held, in the case of *McKeon* v. *See,* 51 N. Y., 300 (10 Am. Rep., 659), that the plaintiff was entitled to an injunction to restrain the defendant from using machinery propelled by steam power, where the evidence showed that the plaintiff's buildings on the adjacent lot were actually injured by the jarring and shaking caused by the use of such machinery. In the last mentioned case the case of *Tipping* v. *St. Helen Smelting Company, supra,* is cited with approval.

In the *Appeal of the Pennsylvania Lead Company,* 96 Penn. St., 116 (42 Am. Rep., 534), it was held that the plaintiff was entitled to an injunction to restrain the company from carrying on lead smelting works on its own premises, where the evidence tended to show that such works emitted offensive, poisonous, and noxious fumes and vapors, producing danger to animal and vegetable life on adjoining premises. In a note to that case, the case of *Pennoyer* v. *Allen,* decided by the Supreme Court of Wisconsin in January, 1883, is cited, in which the action was to recover damages for the maintenance of a tannery on the defendant's premises, adjoining those of the plaintiff, and the question was distinctly presented, whether the fact that the tannery was conducted and operated in a reasonable and proper manner, so that no odors of a disagreeable character were sent forth except such as are incident to a tannery properly conducted, would be a defence to the action. The court held that this would be no defence, saying: "The ownership of land carries with it the rightful use of the atmosphere while passing over it. Title to land gives to the owner the right to impregnate the air upon and over the same with such smoke, vapor, and smells as he desires, provided he does not contaminate the

atmosphere to such an extent as to substantially interfere with the comfort or enjoyment of others, or injure the use of their property * * when such comfort and enjoyment are so impaired and compensation is demanded, it is no defence to show that such business was conducted in a reasonable and proper manner, and with more than ordinary cleanliness, and that the odors sent over and upon such adjacent premises were only such as were incident to the business when properly conducted."

See, also, *Balt. & Poto. R. R. Co.* v. *First Baptist Church*, 108 U. S., 317, in which the action was to recover damages for injuries sustained by the plaintiff below arising from the noise, smoke, and odors emanating from the engine house and work shops of the railroad company, constructed and maintained on a lot adjoining the church building, in the city of Washington, where the court, in response to a defence set up by the railroad company that their charter permitted them to enter the city of Washington, and to construct such works as were necessary and expedient for the completion and maintenance of its road, used this language: "The grant of powers and privileges to do certain things does not carry with it any immunity for private injuries which may result directly from the exercise of those powers and privileges." And again, the court said: "If, as asserted by the defendant, the noise, smoke, and odors which are the cause of the discomfort and annoyance to the plaintiff are no more than must necessarily arise from the nature of the business carried on, with an engine house and workshop as ordinarily constructed, then the engine house and workshop should be so remodeled and changed in their structure as to prevent, if that be possible, the nuisance complained of; and if that be not possible, they should be removed to some other place where, by their use, the plaintiff would not be thus annoyed and disturbed in the enjoyment of its property." See, also, *McAndrews* v. *Collerd*, 13 Vroom (N. J.), 189 (36 Am. Rep., 508); *Heeg* v. *Licht*, 80 N. Y., 579 (36 Am. Rep., 654); *Laflin &c. Powder Co.* v. *Tearney*, 131 Ill., 322 (19 Am. St. Rep., 34); *City of Tiffin* v. *McCormack*, 34 Ohio St., 638 (32 Am. Rep., 408); *Euler* v. *Sullivan*, 75 Md., 616 (32 Am. St. Rep., 420)— affirming Susquehanna Fertilizer Co. v. Malone, *supra.*

We think, therefore, that plaintiff's first exception should be sustained.

The second error imputed to the Circuit Judge is in instructing the jury that, "if the injury is in part the result of vapors, as charged in the complaint, and in part the result of other causes, the verdict must be for the defendant, unless the testimony establishes that the injury would not have resulted except for the vapor charged as causing the alleged injury." This instruction was erroneous, or, to say the very least of it, was misleading. Under this instruction the jury might very well suppose that, even if they came to the conclusion that the vapors emanating from the defendant's mill did injure the plaintiff's property, yet if they, at the same time, believed that a part of the injury sustained by the plaintiff was due to other causes, for example, the work of the worm, referred to in the testimony as the borer, they could not find for the plaintiff. This we do not understand to be the law. The fact that one has sustained injury at the hands of another, if it appears that he has also sustained injury from causes other than the act of the wrongdoer, will not, in our judgment, relieve the wrongdoer from liability to respond in damages for the injury which he has caused.

Another objection to this portion of the charge is that it imposed upon the plaintiff the burden of proving a negative. The charge necessarily implied that it was not sufficient for the plaintiff to show that his property had been injured by the noxious gases escaping from the defendant's mill, but it was necessary for him to go further, and show that the injury of which he complained was not due to any other cause. If, as matter of fact, the injury complained of by the plaintiff did proceed from other causes, that was a matter of defence to be shown by the defendant.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.