**Milton M. SHOCKLEY, Jr., Roy C. Young, Jr., and W.H. Alford, Plaintiffs,**

v.

**HOECHST CELANESE CORPORATION, Aqua–Tech Environmental, Inc., William H. Groce, III, Union Carbide Chemicals and Plastics Company, Inc., and Owens–Corning Fiberglas Corporation, Defendants.**

Civ. A. No. 6:90–0018–3.

United States District Court, D. South Carolina, Greenville Division.

April 2, 1992.

J. Kendall Few, John C. Few, Few & Few, P.A., Greenville, S.C., for Milton M. Shockley, Jr., Roy C. Young, Jr., W.H. Alford.

Stanley Turner Case, Spartanburg, S.C., David L. Freeman, Bradford Wheeler Wyche, Wyche, Burgess, Freeman & Parham, P.A., Greenville, S.C., Koger McIntosh Bradford, Holcombe, Bomar, Cothran and Gunn, P.A., Spartanburg, S.C., for Hoechst Celanese Corp.

Russell W. Harter, Jr., Chapman, Harter & Groves, P.A., Greenville, S.C., Walter Allen Reese, Ronald William McKinney,

Duggan, Reese & McKinney, Greer, S.C., for William H. Groce, III.

Theodore von Keller, Adams, Quackenbush, Herring & Stuart, P.A., Columbia, S.C., Jeffrey N. Martin, Patrick McGlone, Hunton & Williams, Washington, D.C., for Browning–Ferris Industries Chemical Services, Inc.

Martha E. Johnson, Robinson, McFadden & Moore, for Shakespeare Co.

Robert W. Sullivan, Fort Mill, S.C., for M. Lowenstein Corp.

Joseph A. Rhodes, Jr., Haynsworth, Baldwin, Miles, Johnson, Greaves & Edwards, Greenville, S.C., for Jadco Inc., JP Stevens & Co., Inc.

David Horton Wilkins, Timothy E. Madden, Wilkins, Nelson and Kittredge, P.A., Greenville, S.C., for Greerco Inc.

Robert Wightman Dibble, Jr., James William Potter, Richard Michael Smith, McNair Law Firm, P.A., Columbia, S.C., for Allied Chemical Nuclear Products, Inc., North American Phillips Corp., WR Grace & Co.–Conn, Dow Chemical Co., Union Carbide Chemicals and Plastics Co., CH Patrick & Co., Inc., BASF Corp., North American Philips Corp.

William Benson Darwin, Jr., William Ussery Gunn, Holcombe, Bomar, Cothran & Gunn, P.A., Spartanburg, S.C., Charles H. Tisdale, Jr., James Vines, King & Spalding, Atlanta, Ga., for Proctor Chemical Co., Inc.

Steven Edward Farrar, J. Richard Kelly, Joseph Edmund Major, Leatherwood, Walker, Todd & Mann, Greenville, S.C., for Platt Saco Lowell Corp.

Russell Thomas Burke, Leon Carroll Harmon, Harold W. Jacobs, Nexsen, Pruet, Jacobs & Pollard, Columbia, S.C., for Square D Co.

William Alexander Coates, Greenville, S.C., for Owens/Corning Fiberglas Corp., Exide Corp., Minnesota Min. & Mfg. Co., General Battery Corp.

John A. Hagins, Jr., Brown & Hagins, P.A., Greenville, S.C., Joseph Kearfott, Hunton & Williams, Richmond, Va., for Textron Inc.

John Bowman McLeod, Greenville, S.C., for Steel Heddle Mfg. Co.

Stephen Henry Brown, Leo Howard Hill, Hill, Wyatt & Bannister, Greenville, S.C., for Baxter Healthcare Corp.

## ORDER

GEORGE ROSS ANDERSON, Jr., District Judge.

This matter is before the Court on the renewed motions of Defendants Hoechst Celanese Corporation and William H. Groce, III for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motions are denied.

### I. Factual Summary

Mr. Groce worked at the Hoechst Celanese plant near Greer as a chemist for seven years until approximately 1974. In 1971, he opened a chemical reclamation facility on a two acre tract of land directly across the road from the Hoechst Celanese plant. Mr. Groce accepted chemical waste from numerous industries in the area including Hoechst Celanese's Fiber Industries, Hystron, and Greer plants. There was testimony and evidence that shipments from those three Hoechst Celanese plants contained carbon tetrachloride, trichloroethylene, and other chemicals. At least one of those shipments consisted of 350 barrels of hazardous chemicals that had been stored for some time at the Hoechst Celanese Greer plant. Mr. Groce testified that he saw some of those barrels rusting and leaking chemicals while he worked at Hoechst Celanese. During the course of the operation of Mr. Groce's facility, hazardous chemicals including carbon tetra-

chloride, trichloroethylene, and others were spilled onto the ground. That facility was closed in 1976 when the property was sold to Hoechst Celanese. Shortly after Hoechst Celanese purchased the property, all structures and materials were removed and the property was paved over as a parking lot for Hoechst Celanese employees. The chemicals spilled at the Groce site have contaminated the groundwater beneath the Hoechst Celanese parking lot and that contamination has migrated onto the property now owned by Plaintiffs.

In early 1989, Plaintiffs purchased the property adjoining the Hoechst Celanese parking lot with the intention of developing a residential subdivision. Work was halted on the subdivision, however, after Hoechst Celanese informed Plaintiffs of the environmental contamination problems at their parking lot.

The Plaintiffs filed suit under CERCLA, and the following common law causes of action: strict liability for ultra-hazardous activities, trespass, nuisance, and negligence.[1] Plaintiffs' common law causes of action were tried before a jury between January 7 and 10 1992, resulting in a verdict against Hoechst Celanese and William H. Groce, III for $250,000 actual damages.[2]

### II. Strict Liability

Strict liability for abnormally dangerous activities has been part of the common law of South Carolina since at least 1894 when the Supreme Court of South Carolina imposed it on the manufacturer of sulfuric acid for the escape of noxious gases which damaged neighboring land. *Frost v. Berkeley Phosphate Co.*, 42 S.C. 402, 20 S.E. 280 (1894). In 1960, the Supreme Court of South Carolina specifically adopted RESTATEMENT (SECOND) OF TORTS § 519 which is the modern statement of the law on strict liability for abnormally dangerous or ultra-hazardous activi-

---

1. The other Defendants are not involved in this motion. Groce Laboratories, Inc. was in bankruptcy and was not involved in the trial of the case. The Court directed a verdict in favor of Owens Corning Fiberglas Corporation and the jury found in favor of Union Carbide Chemicals and Plastics Company, Inc.

2. The Plaintiffs' CERCLA claims, the CERCLA claims of the Defendants, and various third party claims and cross-claims have not yet been litigated.

ties. *Wallace v. A.H. Guion & Co.*, 237 S.C. 349, 117 S.E.2d 359, 361 (1960). Plaintiffs have cited numerous cases from around the country in both state and federal courts in which the doctrine of strict liability has been applied to the use, storage, and disposal of hazardous chemicals such as those involved in this case.

■ Despite this authority, Defendants claim that the recent case of *Snow v. City of Columbia*, — S.C. —, 409 S.E.2d 797 (Ct.App.1991) limits the doctrine of strict liability in South Carolina to blasting cases such as *Wallace*. The *Snow* case involved a claim in strict liability for damages caused to the Plaintiffs' residence by the escape of water from a municipal water main. The Court of Appeals rejected the application of *Rylands v. Fletcher*, L.R.3 H.L. 330 (1868), which also involved the imposition of strict liability for the escape of water. The *Snow* opinion can be read, however, in no way other than as support for the proposition that engaging in an abnormally dangerous or ultra-hazardous activity "would remove the case from the normal rule of no liability without fault." 409 S.E.2d at 799.

> The extent to which the common law recognized liability without fault is quite limited. Traditionally, "no fault" or "strict" liability was confined to a few narrowly defined categories such as ... *so-called ultra-hazardous activities.*

409 S.E.2d at 800 (emphasis added) (citing *Wallace, supra,* and *Frost, supra* ).

Hoechst Celanese's reading of *Snow*, therefore, is flawed, and this Court is convinced that strict liability for ultra-hazardous activities as expressed in RESTATEMENT (SECOND) OF TORTS § 519 is firmly established in the common law of South Carolina.

■ Defendant Hoechst Celanese also contends that the evidence does not support the jury's verdict in Plaintiffs' favor on the strict liability cause of action, contending that its only "activity" was to deliver chemicals to Mr. Groce for reclamation. The use of an independent contractor, however, to handle work involving an abnormally dangerous activity does not insulate Hoechst Celanese from liability. If one "employs an independent contractor to do work which the employer knows or has reason to know involves an abnormally dangerous activity, [he] is subject to liability to the same extent as the contractor for physical harm to others caused by the activity." RESTATEMENT (SECOND) OF TORTS § 427A. There is ample evidence in the record that Hoechst Celanese knew or had reason to know that the work it employed Mr. Groce to do involved an abnormally dangerous activity. Moreover, there was testimony at trial that Hoechst Celanese knowingly delivered rusty, aging, and leaking barrels of hazardous chemicals to Mr. Groce's site where they knew the barrels would be stored for some time before reclamation. Based on this evidence, the jury was justified in finding that Hoechst Celanese itself engaged in the disposal of hazardous chemicals, for which they are strictly liable.

III. Trespass

■ Hoechst Celanese also contends that it is not liable to Plaintiffs for trespass because "trespass does not lie for nonfeasance or failure to perform a duty," citing *Snow v. City of Columbia, supra.* Although the Court of Appeals in *Snow* did state that "the invasion of the land must be intentional," it added:

> Intent is proved by showing that the defendant acted voluntarily *and that he knew or should have known the result would follow from his act....* Although neither deliberation, purpose, motive, nor malice are necessary elements of intent, the defendant must intend the act which in law constitutes the invasion of the plaintiff's right.... Trespass is an intentional tort; and while *the trespasser, to be liable, need not intend or expect the damaging consequence of his entry,* he must intend the act which constitutes the unwarranted entry on another's land.

*Snow,* 409 S.E.2d at 802 (emphasis added). There was ample evidence in the record upon which a jury could base its finding that Hoechst Celanese intended the act of

delivering hazardous chemicals to Mr. Groce and "knew or should have known the result would follow from [its] act."

In addition, *Snow* is easily distinguished from this case. There was no negligence claim before the Court of Appeals in *Snow*[3], and the court specifically ruled that strict liability was not applicable on those facts. Therefore, *Snow* involved a nonnegligent trespass not involving an abnormally dangerous activity for which one is liable only when one intends the actual intrusion on the plaintiff's property. *See Dial v. City of O'Fallon*, 81 Ill.2d 548, 44 Ill.Dec. 248, 251, 411 N.E.2d 217, 220 (1980). *See also* RESTATEMENT (SECOND) OF TORTS § 165 (If the trespass "causes harm to the land," the trespasser may be liable for a negligent trespass or one involving an abnormally dangerous activity.) This case, on the other hand, involved an abnormally dangerous activity, negligence, and harm to the Plaintiffs' land and there is ample evidence in the record to support the jury's findings in favor of the Plaintiffs on those points.

■ Finally, Hoechst Celanese is liable for a trespass committed by Mr. Groce, its independent contractor, if the work Mr. Groce was employed to do is work "which the employer knows or has reason to know to be likely to involve a trespass upon the land of another." RESTATEMENT (SECOND) OF TORTS § 427B. This principle was charged to the jury and the evidence amply supported the jury's finding.

## IV. Nuisance

■ Hoechst Celanese contends that it is not liable for nuisance because it did not participate to a substantial extent in carrying on the nuisance in this case, citing RESTATEMENT (SECOND) OF TORTS § 834. As mentioned above, there was evidence before the jury that Hoechst Celanese knowingly delivered rusty, aging, and leaking barrels of hazardous chemicals to the Groce site. If the jury believed this evidence, it was more than justified in find-

ing that Hoechst Celanese did participate to a substantial extent in carrying on the nuisance. In addition, RESTATEMENT (SECOND) OF TORTS § 427B provides that one is liable for a nuisance created by an independent contractor if the independent contractor is employed to do work "which the employer knows or has reason to know to be likely to involve ... the creation of a public or a private nuisance." The evidence before the jury amply supported its finding on this point.

■ Hoechst Celanese also contends that the Plaintiffs cannot recover for nuisance because they purchased the property after the Groce site had been closed and paved over as a parking lot. Hoechst Celanese ignores the fact that the contamination is still on both the Plaintiffs' property and the Hoechst Celanese parking lot, and that, therefore, the nuisance exists even now. In addition, it is no defense to a nuisance cause of action that the Plaintiffs purchased the property after the nuisance was created. "The fact that a person voluntarily comes to a nuisance by moving into the sphere of its injurious effects, *or by purchasing adjoining property* ... does not prevent him from recovering damages for injuries sustained therefrom, or deprive him of the right to enjoin its maintenance." *Carter v. Lake City Baseball Club*, 218 S.C. 255, 62 S.E.2d 470, 478 (1950).

## V. Negligence

■ Both Hoechst Celanese and William H. Groce, III contend that there was not sufficient evidence upon which a jury could base a verdict in favor of the Plaintiffs on their negligence theory. Mr. Groce testified that Hoechst Celanese stored hundreds of aging, rusty, and leaking barrels of hazardous chemicals on its property until July of 1975 when those barrels were delivered by Hoechst Celanese to the Groce site. There was evidence that Hoechst Celanese knew Mr. Groce stored the barrels he received on his property for some time before actually beginning the process of reclaim-

**3.** The trial court directed a verdict in favor of the defendants on the negligence claim and it was apparently not appealed.

ing the chemicals. Based on this evidence, the jury was justified in finding Hoechst Celanese to be negligent in the following particulars: (1) They negligently disposed of hazardous chemicals in such a way that these chemicals contaminated the groundwater on Plaintiffs' property; (2) They failed to properly supervise the disposal of their hazardous waste;[4] (3) They allowed hazardous chemicals to escape into the environment "caus[ing] or tend[ing] to cause a condition of pollution" in violation of various sections of the South Carolina Pollution Control Act and other statutes passed by the South Carolina General Assembly as early as 1950;[5] (4) They failed to warn Plaintiffs of the contamination existing on the Hoechst Celanese property.

Hoechst Celanese also contends that there is no legal basis for imposing a duty to warn on them. Various sections of the RESTATEMENT (SECOND) OF TORTS, however, support Plaintiffs' theory of a duty to warn.

> A possessor of land who creates or permits to remain on the land an ... artificial condition so close to the land in the possession of another that the possessor should realize that it involves an unreasonable risk of *physical harm* to others coming in contact therewith while lawfully using the *adjacent land*, is subject to liability for *physical harm* thereby caused to them, if the condition is one of which they neither know or should know and the possessor does not *exercise reasonable care to warn them of it.*

RESTATEMENT (SECOND) OF TORTS § 370 (emphasis added). *See also* RESTATEMENT (SECOND) OF TORTS §§ 321, 366; *Piccolini v. Simon's Wrecking,* 686 F.Supp. 1063, 1070 (M.D.Pa.1988).

As to Mr. Groce, the evidence clearly supported the jury's finding of negligence on his part.

---

**4.** Hoechst Celanese had a non-delegable duty to insure that the chemicals were disposed of properly. RESTATEMENT (SECOND) OF TORTS §§ 416 through 429; *Alexander v. Seaboard Airline Railroad,* 221 S.C. 477, 71 S.E.2d 299, 304 (1952).

■ Hoechst Celanese and Mr. Groce also contend that Plaintiffs were contributorily negligent as a matter of law for not properly investigating the property before purchasing it and specifically for not doing an environmental audit. Hoechst Celanese called an expert who testified that it was customary in South Carolina in 1988 to perform an environmental audit. On cross-examination, however, he admitted that he knew of only two instances in the history of the state in which an environmental audit had been performed, that being the acquisition of Hilton Head and Kiawah Islands. Hoechst Celanese's own appraisal expert, Wilkins Norwood, admitted that although he had been in the property development business for more than twenty years, he had never performed an environmental audit. Plaintiffs Shockley and Alford testified that it was not the customary practice in South Carolina to perform an environmental audit in 1988 and 1989. Under those circumstances, the question of the Plaintiffs' contributory negligence was one for the jury. As to Mr. Groce's claim that Plaintiffs assumed the risk as a matter of law, there was no evidence that Plaintiffs had any prior knowledge of contamination on the property.

## VI. Conclusion

Because the law and evidence supports each of Plaintiffs' legal theories and the jury's verdict, the renewed motions for judgment as a matter of law by Hoechst Celanese and William H. Groce, III are denied.

IT IS SO ORDERED.

---

**5.** *See South Carolina Code Ann.* § 48–1–10, *et seq.;* Act No. 1049 of 1959, § 8; Act No. 383 of 1965, § 5; Act No. 439 of 1969, § 3; Act No. 1157 of 1970, § 13(a).