996 F.2d 1212
 38 ERC 1330
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Milton M. SHOCKLEY, Jr.; Roy C. Young, Jr.; W. H. Alford,
Plaintiffs-Appellees,
v.
HOECHST CELANESE CORPORATION, Defendant & Third Party
Plaintiff-Appellant,
and
AQUA-TECH ENVIRONMENTAL, INCORPORATED, formerly known as
Groce Laboratories, Incorporated; William H. Groce, III;
Union Carbide Chemicals and Plastics Company, Incorporated;
Owens-Corning Fiberglas Corporation, Defendants,
v.
ALLIED CHEMICAL NUCLEAR PRODUCTS, INCORPORATED; Platt Saco
Lowell Corporation; Square D Company; W R Grace & Co,
Connecticut; The Dow Chemical Company; General Battery
Corporation; C. H. Patrick & Company, Incorporated;
Textron, Inc; Steel Heddle Manufacturing Company; Tanner
Chemical Company, Incorporated; Baxter Healthcare
Corporation; Apache Corporation; Columbia Organic Chemical
Company, Incorporated; Carolina Plating & Stamping Company;
Bridgestone/ Firestone, Incorporated; Basf Corporation;
Southern Railway Company; Coats & Clark, Incorporated;
Exide Corporation; North American Phillips Corporation; J
P Stevens & Co; Phillips Fibers Corporation; American
Monorail, Incorporated; Minnesota Mining & Manufacturing
Company; Spartan Express, Incorporated; Overnite
Transportation Company; Roadway Express; Central
Transport, Inc.; Hans Fischer; Browning-Ferris Industries
Chemical Services, Incorporated; C. R. Bard, Incorporated;
Shakespeare Company; King's Laboratory, Incorporated; M.
Lowenstein Corporation; Schlumberger Industries,
Incorporated; Chase Packaging Corporation; S. W.
Industries, Incorporated; McNeil PPC, Incorporated; McLean
Trucking Company; JADCO, Incorporated; Greerco,
Incorporated, Formerly Known as Intex Products,
Incorporated; Proctor Chemical Company, Incorporated, Third
Party Defendants.
ROY C. YOUNG, Jr.; W. H. Alford; Milton M. Shockley, Jr.,
Plaintiffs-Appellees,
v.
William H. Groce, III, Defendant-Appellant,
and
AQUA-TECH ENVIRONMENTAL, INCORPORATED, formerly known as
Groce Laboratories, Incorporated; Union Carbide Chemicals
and Plastics Company, Incorporated; Owens-Corning Fiberglas
Corporation, Defendants,
HOECHST CELANESE CORPORATION, Defendant & Third Party Plaintiff,
v.
ALLIED CHEMICAL NUCLEAR PRODUCTS, INCORPORATED; Platt Saco
Lowell Corporation; Square D Company; W R Grace & Co,
Connecticut; the Dow Chemical Company; General Battery
Corporation; C. H. Patrick & Company, Incorporated;
Textron, Inc; Steel Heddle Manufacturing Company; Tanner
Chemical Company, Incorporated; Baxter Healthcare
Corporation; Apache Corporation; Columbia Organic Chemical
Company, Incorporated; Carolina Plating & Stamping Company;
Bridgestone/Firestone, Incorporated; Basf Corporation;
Southern Railway company; Coats & Clark, Incorporated;
Exide Corporation; North American Phillips Corporation; J
P Stevens & Co; Phillips Fibers Corporation; American
Monorail, Incorporated; Minnesota Mining & Manufacturing
Company; Spartan Express, Incorporated; Overnite
Transportation Company; Roadway Express, Incorporated;
Central Transport, Inc.; Hans Fischer; Browning-Ferris
Industries Chemical Services, Incorporated; C. R. Bard,
Incorporated; Shakespeare Company; King's Laboratory,
Incorporated; M. Lowenstein Corporation; Schlumberger
industries, incorporated; Chase Packaging Corporation; s.
w. industries, incorporated; McNeil PPP, Incorporated;
McMean trucking company; JADCO, Incorporated; Greerco,
Incorporated, formerly known as Intex Products,
Incorporated; Proctor Chemical Company, Incorporated, Third
Party Defendants.
 Nos. 92-1521, 92-1543.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 4, 1993.
Decided: June 28, 1993.
 
 Appeals from the United States District Court for the District of South Carolina, at Greenville. G. Ross Anderson, Jr., District Judge. (CA-90-18-6-3)
 Bradford W. Wyche, Wyche, Burgess, Freeman & Parham, P.A., Greenville, South Carolina, for Appellant
 Hoechst Celanese Corp.; Walter Allen Reese, Duggan, Reese & McKinney, P.A., Greer, South Carolina, for Appellant Groce.
 J. Kendall Few, Few & Few, P.A., Greenville, South Carolina, for Appellees.
 David L. Freeman, Wyche, Burgess, Freeman & Parham, P.A., Greenville, South Carolina, for Appellant Hoechst Celanese Corp.
 John C. Few, Few & Few, P.A., Greenville, South Carolina, for Appellees.
 D.S.C.
 AFFIRMED IN PART AND REVERSED IN PART.
 Before WIDENER and LUTTIG, Circuit Judges, and HEANEY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Hoechst Celanese Corporation and William H. Groce, III, appeal from a judgment entered by the district court upon a jury verdict in favor of Milton M. Shockley, Jr., Roy C. Young, Jr., and W. H. Alford and from the district court's subsequent order denying appellants' renewed motions for judgment as a matter of law in this groundwater contamination case. Although we conclude that appellants were entitled to judgment on appellees' strict liability cause of action, we hold that the jury's verdict was adequately supported by three other independent theories of liability, and therefore affirm the judgment of the court below.
 
 I.
 
 2
 William H. Groce, III, worked as a chemist for Hoechst Celanese Corporation at its plant in Greer, South Carolina, from the late 1960s until 1974.[1] As part of his duties, Groce disposed of hazardous chemicals. Groce testified that Hoechst-Celanese officials stored hundreds of barrels of hazardous waste at the plant, sometimes delaying for years before disposing of the barrels. In many cases, these barrels rusted and deteriorated to such an extent that chemical waste would seep through onto the ground. J.A. at 332-33.
 
 
 3
 In 1971, while still working for Hoechst, Groce opened Groce Laboratories (Groce Labs), a hazardous chemical reclamation facility, on a two-acre tract directly across the street from Hoechst-Celanese. Groce Labs accepted chemical waste from numerous area industries and distilled it into usable products. Hoechst-Celanese employees were fully aware of the Groce Labs operation and of the fact that barrels of waste occasionally would lie unattended on the ground for varying lengths of time before they were processed. Uncontroverted evidence showed that over a dozen shipments of waste, comprising hundreds of barrels, were sent to Groce Labs from Hoechst-Fiber Industries and Hoechst-Hystron, and that these shipments contained significant amounts of carbon tetrachloride, methylene chloride, trichloroethylene, and other highly toxic chemicals. See, e.g., id. at 346, 1315-17. Groce testified that, as a general matter,"the barrels that we got were not always in good shape," so that some of them "might fall apart" when moved. Id. at 335.
 
 
 4
 After Groce left Hoechst's employ in 1974, Hoechst-Celanese officials decided to dispose of approximately 350 drums of hazardous waste. An inventory conducted in June, 1975, revealed that over 100 of the barrels were in need of repair, with twenty-three being completely rotten or otherwise heavily damaged. Id . at 1324-25. There was no evidence that the drums were repaired prior to disposal.[2] Groce Labs bid for disposal of the 350 Hoechst-Celanese drums and their contents.
 
 
 5
 Although a letter written by a Hoechst-Celanese manager on July 8, 1975, stated that Groce Labs would be awarded the contract, trial testimony reflects that another company's bid prevailed. Id. at 1323, 360. That company sub-contracted the bulk of the drums to Groce Labs, however, and Groce himself crossed the street to Hoechst- Celanese, removed the drums, and brought them to Groce Labs to await processing. Although a Hoechst employee testified to the contrary, there is evidence that Hoechst-Celanese officials may have known of and approved the delivery of the plant's waste directly to Groce Labs.
 
 
 6
 The parties dispute the condition of the drums taken from Hoechst-Celanese, and the length of time that they laid on the ground at Groce Labs before their contents were distilled. Groce's testimony suggested that some of the drums he removed from Hoechst-Celanese were the same ones that he had observed rusting, leaking, and rotting during the years that he had worked at the plant, and that these barrels then remained unprocessed at the Groce Labs site for nearly two years.[3]
 
 
 7
 Groce sold his property to Hoechst in 1977. Hoechst paved the entire area and has since used the property exclusively as a parking lot. In May, 1989, appellees Shockley, Young, and Alford, a group of real estate developers, purchased a seventy-three acre parcel of land adjoining this parking lot, intending to create a residential subdivision. Nine days after title passed to the developers, Hoechst informed them that the groundwater beneath the parking lot was contaminated. Testing revealed, and the parties no longer dispute, that the developers' groundwater is also thoroughly contaminated by hazardous chemicals which were dumped or spilled onto the ground at the Groce Labs site during reclamation operations during the 1970s and which eventually made their way into the groundwater beneath the downgradient tract now owned by the developers. The contaminating chemicals include the types shipped to Groce Labs from the three Hoechst plants. Id. at 1181. The contamination is ongoing and will continue indefinitely.
 
 
 8
 The developers brought this action in the district court against Hoechst, Groce, and two of Groce's other former customers, Union Carbide and Owens-Corning, seeking relief under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601-9675, and monetary damages under pendent South Carolina claims for trespass, nuisance, negligence, strict liability and, against all defendants except Groce, negligent entrustment. The state law claims were tried separately before a jury in January, 1992.[4] The district court granted Owens-Corning's motion for judgment as a matter of law during trial. The jury returned a verdict in favor of Union Carbide on all counts and in favor of Hoechst on the negligent entrustment count, but found Hoechst and Groce liable to the developers in the amount of $250,000 in actual damages on the trespass, nuisance, negligence, and strict liability counts.
 
 
 9
 The district court entered judgment on the jury verdict, and subsequently denied by published order Hoechst's and Groce's renewed motions for judgment as a matter of law. Shockley v. Hoechst Cela- nese Corp., 793 F. Supp. 670 (D.S.C. 1992).[5] Hoechst and Groce thereafter brought these separate appeals.[6]
 
 II.
 
 10
 Hoechst makes two arguments against the judgment and post-trial rulings of the district court, urging first that the jury's verdict as a whole is predicated on an impermissible theory of liability, and alternatively, that the verdicts on each of the four independent counts upon which the jury found Hoechst liable are unsupported as a matter of law.
 
 A.
 
 11
 We first address Hoechst's attack on the verdict as a whole. Hoechst reasons from the verdict in favor of Union Carbide on all counts and in favor of Hoechst on the negligent entrustment count that the jury did not intend to impose liability, strict or otherwise, on Hoechst merely for delivering chemical waste to Groce and Groce Labs for reclamation, which is the only activity that Hoechst was alleged to have engaged in here. Furthermore, in Hoechst's view, " [t]he jury could not [logically] have found on the one hand that Hoechst did not negligently entrust its waste to Mr. Groce, but on the other hand find Hoechst liable because it knew or should have known that Mr. Groce would likely create a nuisance or trespass in the way he handled the waste," or because it was otherwise negligent. Reply Br. at 3. Despite all of this, Hoechst was found liable. Hoechst, consequently, contends that either the verdict was hopelessly inconsistent, or the jury imposed liability on Hoechst only because it now owns the old Groce Labs site, an insufficient basis as a matter of law for sustaining liability.
 
 
 12
 We find this argument unpersuasive. It is not our task to discern something so inscrutable as the jury's intent. We must confine our efforts instead to a determination of whether adequate evidence supports the jury's verdicts that were in fact rendered against Hoechst. The verdicts in favor of Union Carbide, of course, are irrelevant to that inquiry.[7] Moreover, the elements of proof for the tort of negligent entrustment differ from those required to impose liability under trespass, nuisance, negligence, or strict liability theories, so the jury's contrary findings with respect to those torts hardly need be deemed inconsistent with the jury's verdict on the negligent entrustment count. Even if they were, inconsistent verdicts are commonplace, and except in rare instances do not constitute grounds for reversal. Last, as discussed infra, more than sufficient evidence supports the jury's conclusions that Hoechst's waste disposal activities involved or comprised a trespass, a nuisance, and/or negligence, so there is no need to speculate, as does Hoechst, that the jury imposed liability on an impermissible ground.
 
 B.
 
 13
 Hoechst alternatively challenges the jury's verdicts against it on the trespass, nuisance, negligence, and strict liability counts. Hoechst faces a heavy burden on appeal of these verdicts, for "[t]he denial of [its] motion[ ] for ... judgment n.o.v. cannot be disturbed unless, without weighing the evidence or assessing witness credibility, we conclude that reasonable people could have returned a verdict only for [Hoechst]." Cooper v. Dyke, 814 F.2d 941, 944 (4th Cir. 1987). When assessing Hoechst's contentions, we view the evidence in the light most favorable to appellees, giving them the benefit of all inferences fairly supported by the evidence. Id.
 
 
 14
 Under this standard of review, it is evident that more than sufficient evidence supported the jury's verdict on the trespass theory. Under South Carolina law,
 
 
 15
 Trespass is an intentional tort; and while the trespasser, to be liable, need not intend or expect the damaging consequence of his entry, he must intend the act which constitutes the unwarranted entry on another's land.... Intent is proved by showing that the defendant acted voluntarily and that he knew or should have known the result would follow from his act.
 
 
 16
 Snow v. City of Columbia, 305 S.C. 544, 409 S.E.2d 797, 802 (Ct. App. 1991). After explaining these basic principles, the court below, borrowing from the Restatement (Second) of Torts § 427B, charged the jury that "one who employs an independent contractor to do work which the employer knows, or has reasons to know, to be likely to involve a trespass upon the land is subject to liability f[or] harm resulting ... from such trespass." J.A. at 779. Hoechst did not object to this instruction. Given that Hoechst delivered numerous shipments of hazardous waste to Groce Labs, including as many as 350 drums from Hoechst-Celanese in July, 1975; that many of these barrels of waste were rusting and leaking; and that Hoechst employees were fully aware of Groce's loose operation and its plant safety defects, see id. at 352, the jury was entitled to find that Hoechst intentionally employed Groce Labs to do work which it had reason to know was likely to involve contamination of Groce's tract, and ultimately, the surrounding property, including the parcel now owned by appellees.[8]
 
 
 17
 The jury's verdict on the nuisance count must be sustained for similar reasons. The district court, again drawing its charge from the Restatement (Second) of Torts § 427B, instructed the jury without objection from Hoechst, that "[o]ne who employs an independent contractor to do work which the employer knows or has reason to know will likely create a nuisance ... is subject to liability for harm caused from such nuisance." Id. at 780-81.[9] Hoechst contends that, while Groce Labs may have been a nuisance that caused harm to appellees' property, Hoechst did not participate in Groce's operation, and therefore did not help create or maintain the nuisance. The jury reasonably could have found, however, that Hoechst, through knowingly shipping hazardous waste-some of which was in deteriorating containers-to a deficient waste processor, substantially participated in the nuisance.
 
 
 18
 The negligence verdict is also adequately supported by the evidence. While we express no view as to whether Hoechst had a duty to warn appellees of groundwater contamination before they purchased the parcel adjoining the old Groce Labs site, we conclude that the jury could have found Hoechst negligent on a number of the other grounds charged by the district court. The jury was instructed, again without objection, that it could hold Hoechst liable on this count if it found that Hoechst had negligently violated its non-delegable duties to dispose of its waste properly and to supervise that disposal properly, or that Hoechst had violated various South Carolina pollution control statutes through its transactions with Groce Labs. See id. at 782. There is ample evidence in the trial record to support any of these findings.[10]
 
 
 19
 We do agree with Hoechst, however, that both it and appellant Groce were entitled to judgment as a matter of law on appellees' strict liability cause of action. In South Carolina, the strict liability doctrine for the most part has been confined to a small number of ultrahazardous activities. See Snow, 409 S.E.2d at 800; Wallace v. A. H. Guion & Co., 237 S.C. 349, 117 S.E.2d 359, 361 (1960) (adopting view of Restatement of Torts that blasting is ultrahazardous and subject to strict liability; decision limited to blasting). The state's courts or legislature have not extended the doctrine to cover either the disposal or reprocessing of hazardous chemical waste. The district court, due perhaps to a misreading of Wallace and an overly liberal reading of Snow, held that such an extension was appropriate. We cannot agree. While chemical waste is undoubtedly dangerous, it is unclear whether disposal of such waste is inherently as ultrahazardous an activity as is, for example, blasting. In the absence of guidance from South Carolina's courts or legislature, we as a federal tribunal refuse to sanction such an extension of the state's strict liability doctrine, particularly when the disposition of this case does not turn on the issue. Accordingly, we hold that, because the law of South Carolina currently does not recognize strict liability for damages caused by hazardous waste disposal or reclamation, the district court erred in denying appellants' JNOV motions on the strict liability count.
 
 III.
 
 20
 For the reasons stated herein, we reverse the district court's order denying appellants' renewed motions for judgment as a matter of law as it relates to the strict liability cause of action. In all other respects, the order and the judgment of the district court are affirmed.
 
 AFFIRMED IN PART AND REVERSED IN PART
 HEANEY, Senior Circuit Judge, concurring:
 
 21
 Defendant Hoechst's appeal arises from an adverse jury verdict and the district court's order denying its motion for judgment as a matter of law. To have prevailed on its motion, Hoechst needed to demonstrate that each and every pleaded common law cause of action was nonviable as a matter of law. Because Hoechst failed to carry that heavy burden, the district court properly denied its motion. I concur in our affirmance of the district court's order and judgment.
 
 
 22
 The majority, however, also appends dicta suggesting a "part reversal" of the district court's denial of the motion. I write separately to express misgivings about such a practice.
 
 
 23
 Although harmless here because, as the majority notes, "the disposition of this case does not turn on the issue," supra at 13, resourceful litigants in future cases surely will seize upon our gratuitous limitation of South Carolina strict liability law. I would practice restraint and leave the demarcation of this state cause of action to South Carolina courts.
 
 
 
 [1]
 During this time period, the Greer plant was operated by Celanese Corporation, a predecessor company to Hoechst-Celanese Corporation. For clarity, we refer to appellant Hoechst-Celanese Corporation as Hoechst, and to the Greer plant as Hoechst-Celanese. Two other Hoechst plants, Hoechst-Fiber Industries and Hoechst-Hystron, are also involved in this case
 
 
 [2]
 Hoechst contends that Hoechst-Celanese employee Bill Piercy confirmed that the repairs were actually completed prior to disposal of the drums, but in fact he testified only that the inventory was taken. See id. at 390-91
 
 
 [3]
 Prior to selling the Groce Labs site to Hoechst in 1977, Groce was required to remove all of his equipment and approximately 1,500 waste drums from the property. Groce testified that "a lot" of these drums still contained hazardous chemicals upon their removal. Id. at 337. Groce was then asked by appellees' counsel whether many of those chemical-laden drums "were some of the ones you got from Hoechst-Celanese [in 1975] that had been sitting over there deteriorating and rotting all these years," and Groce answered, "I'm sure there were a lot in there." Id. Although this testimony may be susceptible to more than one interpretation, "viewing the evidence in the light most favorable to support the jury verdict," as we must, Persinger v. Norfolk & W. Ry., 920 F.2d 1185, 1189 (4th Cir. 1990), we cannot agree with Hoechst's contention that there was no evidence that Hoechst-Celanese caused aging, rusty, and leaking barrels of hazardous waste to be delivered to Groce Labs in 1975, where some of them remained until 1977
 
 
 [4]
 The district court had jurisdiction over the CERCLA claim pursuant to 42 U.S.C. § 9613(b). Hoechst now contends that the district court lacked jurisdiction over the pendent claims because they and the CERCLA claim did not arise out of a common nucleus of operative fact. See Hoechst's Br. at 40-43. It is clear, however, that the federal and state claims arose out of identical facts and presented many of the same issues. Although the CERCLA and state law claims differ in certain respects, the latter "form[ed] part of the same case or controversy under Article III of the United States Constitution" as the former, and so the district court had discretion to exercise supplemental jurisdiction over the South Carolina causes of action. 28 U.S.C. § 1367(a)
 
 
 [5]
 The developers dismissed their CERCLA claim after prevailing on the state law claims
 
 
 [6]
 Groce did not file a brief with this court, choosing instead to adopt Hoechst's brief as his own. The two appellants, however, are not similarly situated, and Hoechst strenuously distances itself from Groce, upon whom it casts all responsibility for the contamination of appellees' groundwater. See Hoechst's Br. at 5 ("It is undisputed that the volatile organic contamination in the groundwater [beneath appellees' property] was caused by Mr. Groce's prior operations at the[Groce Labs] site."). It is thus unclear whether Groce has adequately preserved any alleged error for review by this court, with the possible exception of Hoechst's contention that appellees were contributorily negligent as a matter of law, which we deal with infra n.10. Suffice it to say for present purposes that evidence presented at trial and recounted supra amply supports the jury's verdict against Groce on the trespass, nuisance, and negligence causes of action. We limit our discussion of these counts, then, to Hoechst's arguments alone. Our analysis of the strict liability count and the contributory negligence issue, on the other hand, pertains to both appellants
 
 
 [7]
 The verdicts in favor of Union Carbide and against Hoechst on all but one count in any event were not necessarily inconsistent. Unlike Union Carbide, Hoechst had a plant directly across the street from Groce Labs, a facility operated by Groce both while he was employed by Hoechst and afterwards. The jury reasonably could have inferred that Hoechst thus had greater reason to know of Groce's operation and its likely side effects
 
 
 [8]
 Hoechst asserts that appellees purchased their land after the contamination had taken place, so that an action in trespass should not lie. The contamination of appellees' groundwater, however, and the trespass, are ongoing and will continue for an indefinite period of time. See id. at 32930
 
 
 [9]
 Indeed, Hoechst effectively concedes that the jury's verdicts on the trespass and nuisance counts are unassailable due to the § 427B instructions. See Reply Br. at 3 ("We do not take issue with the basic proposition that a person generally cannot avoid liability by employing an independent contractor to perform an activity that is 'likely to create a nuisance or trespass.' ")
 
 
 [10]
 Hoechst and Groce contend that appellees, experienced real estate developers, were contributorily negligent as a matter of law because they "foolishly and precipitously" purchased the parcel of land adjoining the old Groce Labs site without conducting an environmental audit of the property, although performance of an audit was a prerequisite to obtaining a bank loan to finance the development of the parcel. Hoechst's Br. at 40. The loan commitment papers, however, state only that South Carolina National Bank had the option to require an audit as a condition of closing. Id. at 1199. These papers, moreover, were signed after appellees had purchased the tract-the loan in question was to be for the development, and not the purchase, of the property. Id . at 1193. Even if the audit requirement were binding, then, appellees' failure to undertake an audit could not bear on their alleged contributory negligence in purchasing the parcel
 Although there was testimony at trial suggesting that appellees were unwise or careless in failing to conduct an audit prior to purchasing the property, other testimony suggested that, in 1989, it was not customary practice in South Carolina to perform an audit before buying land. Id. at 463-64, 530-31. Under these circumstances, "more than one reasonable inference c[ould] be drawn from the evidence," and so the question of appellees' contributory negligence was a "question[ ] of fact for the jury." Felder v. K-Mart Corp., 297 S.C. 446, 377 S.E.2d 332, 333 (1989).